**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Thomas PRICE, William Hollis Price, Defendants-Appellants.**

**Nos. 500, 501, Docket 35492, 35493.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1970.

Decided July 8, 1971.

Certiorari Denied Oct. 26, 1971. See 92 S.Ct. 232.

---

H. Kenneth Schroeder, Jr., U. S. Atty., W. D. New York, Buffalo, N. Y., for the United States.

Charles J. McDonough, Buffalo, N. Y., for defendant-appellant John Thomas Price.

Thomas P. Flaherty, Buffalo, N. Y., for defendant-appellant William Hollis Price.

Before LUMBARD and FEINBERG, Circuit Judges and CLARIE, District Judge.*

LUMBARD, Circuit Judge:

This prosecution was initiated by a three-count indictment. Count I charged John Thomas Price, his brother, William Hollis Price, and Frank Mirabelli with conspiracy to steal 29,772 pounds of magnetic copper wire from Buffalo while these goods were moving in interstate commerce. Count II charged John Thomas Price and Frank Mirabelli with the substantive crime of theft, 18 U.S.C. § 659. Count III charged William Hollis Price with receipt and possession of the stolen wire. After the jury was sworn but before trial commenced, Mirabelli pleaded guilty to a lesser misdemeanor charge and testified for the government at trial. Also appearing for the government were Harold and James Sutton, who were named as co-conspirators but not as defendants. The defense rested at the conclusion of the government's case. John Thomas Price was convicted on both Counts I and II. William Hollis Price was convicted on Count III, the possession count, but the jury acquitted him on the conspiracy charge. John Thomas Price was sentenced to four years imprisonment, three years thereof suspended, and fined $15,000. William Hollis Price received a three year sentence, with two years and six months of this time suspended.

The government's proof established the following: On September 19, 1966, Frank Mirabelli, a truck driver, arrived in Buffalo with the copper wire which he had picked up in Port Newark, New Jersey, for delivery at Western Electric Company's Buffalo plant. Because he had failed to contact Western Electric in advance, Mirabelli was unable to deliver his load, and was told to return the next day. That afternoon Mirabelli, John Thomas Price and the two Suttons agreed to the theft. Pursuant to their plan, Mirabelli unhooked his tractor from the trailer load of copper and then took the tractor to a garage, ostensibly for servicing. The Suttons hooked their own tractor to Mirabelli's trailer and hauled it to New Milford, Pennsylvania while Frank Mirabelli spent the night at John Thomas Price's home for an alibi. One of the Suttons drove the truck while the other followed in an automobile. Upon arriving in New Milford, the Suttons were to store the copper-laden trailer in a kiln dry building, or warehouse, owned by George Price, the defendants' grandfather.

When they reached the kiln dry building, however, the Suttons discovered that John Thomas Price had forgotten to give them the keys, and they called him for instructions. Price advised them to get the keys from George Price at his home just across the state line in New York, so the Suttons drove their car to the grandfather's house. Arriving there, they met William Hollis Price who told them that George was not at home. When the Suttons advised William that they were sent there by his brother with a "hot" load, he agreed to accom-

* Of the District of Connecticut, sitting by designation.

pany them to New Milford and bust the lock on the kiln dry building so that the Suttons could store the goods.

During the ensuing weeks, Kenneth Baker, who leased part of George Price's premises in New Milford, and a James Davison observed copper wire being burned on the property.

On January 10, 1967, the Pennsylvania State Police and a FBI agent, acting on a tip that the grandfather had a load of copper wire stolen from North Carolina, secured a warrant from a Justice of the Peace to search the kiln dry building. No affidavits were presented to this magistrate, although the police did inform him of the nature of their information. A search that day failed to disclose any copper, but vehicles resting inside were found to have been stolen. Armed with this information, the officers secured a new search warrant, again without affidavit, and returned to the building on January 11 to remove the vehicles. While this was being done, one of the officers discovered two spools of copper wire which were identified by number as coming from the shipment Mirabelli had carried.

Since the principal claims raised by each appellant differ, it will be convenient to treat them separately. We affirm the conviction of John Thomas Price. Since we disagree with Judge Curtin's holding that William Hollis Price did not

have standing to challenge the search made on January 10 and 11, we vacate his conviction and remand for further proceedings on his motion to suppress.

## I.

William Hollis Price argues that the Western District of New York was improper venue for his trial on Count III relating to receipt and possession of the stolen property because his possession occurred entirely within Pennsylvania. Because we thought this presented a difficult question of law which was not adequately treated by both parties in their main briefs, we directed the parties, by order dated February 25, 1971, to further explore the issue in supplementary briefs. The government contends that 18 U.S.C. § 659, which contains a special multi-venue provision for interstate theft, and 18 U.S.C. § 3237(a), a general multi-venue statute, clearly authorized William's trial in the Western District.[1] We find these sections more ambiguous in their applicability to the possession count than the government would have us believe. See United States v. Bozza, 365 F.2d 206, 220–222 (2 Cir. 1966); United States v. Ross, 205 F.2d 619 (10 Cir. 1953). See also United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944); Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The

---

1. The venue provision of 18 U.S.C. § 659 relating to theft and possession provides:

"The offense shall be deemed to have been committed not only in the district where the violation first occurred, but also in any district in which the defendant may have taken or been in possession of the said money, baggage, goods, or chattels.

"The carrying or transporting of any such money, freight, express, baggage, goods, or chattels in interstate or foreign commerce, knowing the same to have been stolen, shall constitute a separate offense and subject the offender to the penalties under this section for unlawful taking, and the offense shall be deemed to have been committed in any district into which such money, freight, express, baggage, goods, or chattels shall have

been removed or into which the same shall have been brought by such offender."

18 U.S.C. § 3237(a) provides:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

Crime Committed Formula, 9 U.C.L.A.L. Rev. 751, 775–802 (1962).

We need not resolve this issue, however, for we find that any valid objection to venue William Hollis Price may have was waived below. Although our precedents establish that the constitutional underpinning and importance of proper venue dictate that waiver of objections to venue should not be readily inferred, we have identified two situations where a finding of waiver is proper: (a) when the indictment or statements by the prosecutor clearly reveal this defect but the defendant fails to object; and (b) when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue. United States v. Rivera, 388 F.2d 545 (2 Cir.) cert. denied, 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1396 (1968); United States v. Gross, 276 F.2d 816 (2 Cir.) cert. denied, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed. 2d 1525 (1960); United States v. Brothman, 191 F.2d 70 (2 Cir. 1951).

Under either of these tests, the venue objection here asserted was waived below. At the very outset, counsel was on notice and was in fact aware that the government was proceeding on the assumption that the possession occurred in New Milford, Pennsylvania. Although Count III is silent concerning the place of possession, Count I, the conspiracy count, lists only three overt acts in which William Price's name appears, and all three specify New Milford.[2] By motion dated September 2, 1969, William Hollis Price requested a bill of particulars specifying, inter alia, the date when and place where he conspired illegally. The government's response was that "the in-

dictment herein sufficiently sets forth the information requested." Aside from this explicit notice, defendant's counsel acknowledged in a preliminary hearing before Judge Curtin that he was aware of a "jurisdictional aspect" to the case because there was no "allegation of anything that relates to William Hollis Price in the Western District of New York." At that point, counsel was arguing that William may have been given immunity by a grand jury in Pennsylvania. At the conclusion of this hearing, counsel stated that he would "reserve on the jurisdictional argument that [he] might want to raise" pending further information regarding the investigation conducted by the Pennsylvania grand jury. No venue objection was raised thereafter, even though a motion for a severance was made on January 7, 1970 specifying numerous other grounds.

When the government rested its case, William moved for a directed judgment of acquittal. He argued that there was no showing of his participation in an agreement, and thus the conspiracy count must fall as a matter of law. Similarly, he contended that the proof was insufficient on the possession count, particularly because the government had failed to show that he possessed the wire on the date charged, September 20, 1966. No mention was made of venue. Following the verdict, a motion to set it aside as "contrary to law, contrary to the evidence, and contrary to the weight of the evidence" was tendered. Finally the motion was renewed at sentencing on the same grounds and also because (a) a showing of possession alone was insufficient to convict; (b) William was being

---

2. "(7) On or about the 20th day of September, 1966, the co-conspirators Harold B. Sutton and James Sutton had a conversation with the defendant William Hollis Price in New Milford, Pennsylvania, relative to the storing of the magnetic copper wire.

"(8) On or about the 20th day of September, 1966, the defendant William Hollis Price accompanied the co-conspirators and guided them to a warehouse in New Milford, Pennsylvania.

"(9) On or about the 20th day of September, 1966, the defendant, William Hollis Price, along with co-conspirators James Sutton and Harold B. Sutton, stored the magnetic copper wire in a warehouse in New Milford, Pennsylvania."

It should be noted that item 7 was in error because the conversation occurred in New York, but the load of stolen wire was in Pennsylvania at the time.

convicted of guilt by association, and (c) the testimony of co-conspirators, Harold and James Sutton, as supplemented by that of Baker and Davison, was insufficient as a matter of law. Despite this specificity, no objection to venue was raised.

On the record as a whole, then, defendant's waiver of any defect in venue is manifest. Despite clear notice and actual knowledge of the presumed defect before trial commenced, William never moved to dismiss the indictment on this basis.

■ We do vacate the conviction of William Hollis Price, however, because we conclude that Judge Curtin erred in ruling that William lacked standing to challenge the police officers' search of the kiln dry building in January 1967. Count III, the only count on which William was convicted, charged him with possession of the copper wire stolen from interstate commerce. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960), the Court conferred standing to challenge a search upon a person tried of a narcotics offense whose essential element was possession. Mr. Justice Frankfurter there stated:

> "The same element in this prosecution which has caused a dilemma, i. e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged." *Id.* at 263, 80 S.Ct. at 732.

The government advances numerous arguments as to why the clear holding of *Jones* should not be applied to this case. First, the government points out that the defendant in *Jones* was legitimately on the premises at the time of the search and thus had independent standing to challenge it. William Hollis Price, on the other hand, was not in the vicinity of the kiln dry building at the time of the search. Moreover, the search was not directed at William Price but rather George Price, the grandfather, on the belief that he was concealing a shipment of copper wire stolen from Chapel Hill, North Carolina. The difficulty with the government's position is that the holding in *Jones* that the offense of possession confers standing is clearly designated as an independent alternate holding. Moreover, the Court has subsequently recognized that the two holdings of *Jones* —that the offense of possession confers standing and that anyone legitimately on the premises at the time of the search may challenge it—are independently valid. Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Mancusi v. De Forte, 392 U.S. 364, 368 n. 5, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

Second, the government contends that *Jones* is limited to situations where possession alone is sufficient to convict, whereas in the instant case the government also had to show theft, interstate commerce, and defendant's knowledge. The Third Circuit accepted this argument in a 1964 decision, United States v. Konigsberg, 336 F.2d 844 (3 Cir. 1964), cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964). However, in Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968), Mr. Justice Harlan for the Court interpreted *Jones* as follows:

> "When, as in *Jones*, possession of the seized evidence is itself *an essential element* of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence." (Emphasis added.)

The First, Fourth, Fifth and Seventh Circuits have followed *Simmons* in rejecting the limited reading of *Jones*. United States v. Cobb, 432 F.2d 716 (4 Cir. 1970); United States v. Allsenberrie, 424 F.2d 1209 (7 Cir. 1970); Glisson v. United States, 406 F.2d 423, 427 (5 Cir. 1969); Niro v. United States, 388 F.2d 535 (1 Cir. 1968). See also Kuhl v. United States, 370 F.2d 20, 34–36 (9 Cir. 1966) (in banc), where four dissenters, as the only members of that court to

reach the standing issue, rejected the limited reading of *Jones*.

We agree with these later decisions in holding that, as stated in *Simmons*, there is standing where possession is "an essential element of the offense." To rule otherwise would produce results which bear no relationship to the policies underlying the Fourth Amendment and the view expressed in *Jones* that the government should not be allowed to take inconsistent positions, i. e., that a defendant did not have possession so as to be able to challenge the search, but is guilty of possession.

The government also argues that after *Simmons, supra,* there is no reason to continue to apply the automatic standing rule established in *Jones. Simmons* held that when a defendant testifies at a suppression hearing, his testimony may not be used at trial over objection. 390 U.S. at 394, 88 S.Ct. 967. While it is true that the dilemma between self-incrimination and exercise of Fourth Amendment rights has now been removed, we must reject the government's contention, because *Simmons* explicitly reaffirmed the automatic standing rule of *Jones*. Additionally, the Court's holding that the government should not be allowed the advantage of a conviction based on inconsistent positions is untouched by the rule announced in *Simmons*. United States v. Cobb, 432 F.2d 716, 721–722 (4 Cir. 1970).

Finally, the government contends that unlike *Jones*, William Price was not charged with possession at the time of the search and that this distinction compels a different result. The indictment states that the offense occurred "on or about the 20th day of September 1966," whereas the two searches were conducted on January 10 and 11, 1967. This argument gives us pause, for technically the government's position in challenging William's standing but charging him with possession is not irreconcilable, and is supported by language in United States v. Cowan, 396 F.2d 83 (2 Cir. 1968), and United States v. Allsenberrie, 424 F.2d 1209, 1213 (7 Cir. 1970). But we read

*Cowan, supra,* as resting on the fact that the hotel concededly assumed valid possession of defendant's luggage pursuant to a lien provided by law, and thus Cowan forfeited his rights in the seized items, rather than upon a mere time lag between the date of the offense as charged and the date of the search. The government's purpose in offering the copper wire, which was seized in January 1967, was to support the charge of possession of that wire on September 20, 1966. We believe this is sufficient to confer standing. The alternative for which the government argues would unduly limit *Jones* to those few situations where property is seized contemporaneously with the offense but defendant for whatever reason cannot demonstrate other grounds for standing. It would also compel the defendant to admit his ownership at that later date in order to secure standing.

Since we conclude that William Hollis Price has standing to challenge the search, there remains to be considered whether the search and seizure were valid and whether the admission of the seized evidence, if error, was harmless. Although the police secured search warrants on both dates, it appears that no sworn affidavits were submitted to the issuing magistrate. Judge Curtin expressed serious reservations as to the constitutional adequacy of the procedure followed, but declined to rule on the issue since he found no standing. We think the district court should rule on this question in the first instance. The hearing below was designed to determine standing and consequently it would seem that all the evidence relevant to the merits of the suppression motion may not have been presented and developed.

If the evidence was illegally seized, we find that the error would not be harmless. The search uncovered Mirabelli's trailer and two spools of copper wire which were definitely traced to the stolen Buffalo shipment. Without this evidence, the government has only the uncorroborated testimony of two co-conspirators, James and Harold Sutton, to establish William Price's participation in the

concealment of the stolen Buffalo shipment. Although Kenneth Baker and James Davison did see William together with his grandfather, George Price, on the premises while copper was being burned, Davison admitted stealing over 800 pounds of the copper and implicated Baker in this theft. More important, there is enough in the record from which the jury could infer that George Price was a participant in other thefts, and that the copper seen by Baker and Davison came from this source rather than from the Buffalo theft. Even with the seized items in evidence, the jury clearly had difficulty in reaching its verdict. The jury commenced its deliberations at 3:50 P.M. on January 22, 1970 and the verdict was not announced until 4:30 P.M. on the following day. Moreover, the jury did acquit William Price on the conspiracy charge. In sum, while the government still has a strong case even if the seized evidence should be suppressed, we cannot say beyond a reasonable doubt that the jury could not have reached a different result. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States ex rel. Rosenberg v. Mancusi, 445 F.2d 613 (2 Cir., 1971).

To the extent that William Price joins in other arguments advanced by John Thomas Price, we find them to be without merit for the reasons stated below. Accordingly, we vacate the conviction of William Hollis Price for a determination as to the legality of the search. If the district court finds that the search was proper, a new judgment of conviction should be entered. If the search is found to have been illegal and the resulting evidence must be suppressed, a new trial should be held. The district court should make findings of fact on these issues.

## II.

The arguments raised by John Thomas Price can be disposed of more briefly. We find no merit to any of them.

■ First, John Price seeks derivative standing to challenge the search and seizure because William, or George Price,

who was indicted in the Middle District of Pennsylvania, has standing. This will not do. He was not charged with possession, and the search was not directed against him. Nor has he shown any proprietary interest in the premises, and there is no indication that he was on the New Milford property at the time of the search. As held in Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), a person whose rights were not violated by the search is given no special standing as a co-defendant or co-conspirator. Accord, United States ex rel. Cardaio v. Cassacles, 446 F.2d 632, at 635 (2 Cir., 1971).

■ John Thomas Price next contends that the trial judge should have granted defendants' motion for a new jury after Mirabelli pleaded guilty. Mirabelli changed his plea after the jury had been sworn but before trial commenced, and then testified for the government at trial. But the plea was taken outside the presence of the jury, and thus no error was committed. United States v. Kelly, 349 F.2d 720, 767–768 (2 Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Crosby, 294 F.2d 928 (2 Cir. 1961), cert. denied [Mittleman v. United States, Pettit v. United States, Meredith v. United States], 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962). Appellants can hardly complain that Judge Curtin should have cautioned the jury at the beginning of trial, for he asked counsel whether they wanted him to say anything and they stood mute. Both in his opening statement and charge to the jury, Judge Curtin cautioned that the testimony of accomplices should be given especially close and searching scrutiny, and that the jury should consider "any demonstrated hope of leniency or reward to be gained through testifying." See United States v. Kelly, *supra*, 349 F.2d at 767–768.

■ Defendants also argue that the trial court erred in receiving testimony concerning events after the termination of the conspiracy. The evidence which was admitted did not concern statements

 

made by co-conspirators after the conspiracy had ended. Instead the alleged error was allowing the police to testify regarding the fruits of their search, and receiving the testimony of Baker and Davison concerning the burning of copper wire on the New Milford property in the weeks after the theft. This evidence was properly admitted against both defendants on all counts. United States v. Lutwak, 344 U.S. 604, 617–618, 73 S.Ct. 481, 97 L.Ed. 593 (1953); United States v. Bennett, 409 F.2d 888 (2 Cir.) cert. denied [Haywood v. United States, Jessup v. United States], 396 U.S. 852, 90 S.Ct. 113, 117, 24 L.Ed.2d 101 (1969); United States v. Levinson, 405 F.2d 971, 987 (6 Cir. 1968) cert. denied [Strang v. United States], 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969). No special instructions to the jury on this evidence were necessary, and none were requested.

The next set of objections concerns the trial judge's handling of jury requests in the course of their deliberations. First, it is claimed that Judge Curtin far exceeded the jury's request for a clarification of the theft charge against John Price in Count II. The argument is frivolous. After Judge Curtin had briefly defined "theft" in one sentence, the jury indicated that it still did not understand, so he properly expanded his explanation. Appellant points to no errors in this supplemental charge, and we find none.

Second, it is argued that the court erred in refusing to re-read Mirabelli's testimony. The jury asked "to see the testimony of F. Mirabelli," but the transcript was only partially completed. Judge Curtin acknowledged that he could have read all 94 pages of testimony to the jury, but he felt this would give a lopsided view. Such determinations are committed to the sound discretion of the trial judge. United States v. DePalma, 414 F.2d 394 (9 Cir. 1969), cert denied, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970); United States v. Braxton, 417 F.2d 878 (5 Cir. 1969); Pinckney v. United States, 352 F.2d 69 (5 Cir. 1965); see United States v. Desist, 384 F.2d 889 (2 Cir. 1967), aff'd, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); cf. Tyler v. United States, 361 F.2d 862 (10 Cir. 1966).

John Thomas Price's final contention is that the trial court erred in refusing his request to charge that the jury could convict for a misdemeanor if they found that the value of the stolen goods did not exceed one hundred dollars. The argument is frivolous. It was undisputed that the 29,772 pounds of stolen copper wire had a value of nearly $40,-000. Since there was no dispute on this point, the trial judge was not required to charge on the lesser offense, nor would it have been proper to do so. Sansone v. United States, 380 U.S. 343, 350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). He did charge the jury to acquit if they concluded that the value of the stolen goods did not exceed one hundred dollars.

The conviction of John Thomas Price is affirmed. The conviction of William Hollis Price is vacated and remanded for further proceedings in accordance with this opinion.