STATE, Respondent, v. CHRISTEL, Appellant. [Case No. State 108.]

STATE, Respondent, v. SUZOR, Appellant. [Case No. State 109.]

*Nos. State 108, 109. Argued October 3, 1973.—Decided November 12, 1973.*

(Also reported in 211 N. W. 2d 801.)

148

For the appellants there were briefs and oral argument by *Edward G. Krueger* of Madison.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.   Three issues are raised by this appeal:

1. Did defendants have standing to challenge the allegedly illegal search of the package at the REA office prior to delivery of the package?

2. Is the evidence sufficient to support a finding that the defendants believed or knew the substance in their possession was marijuana?

3. Is the evidence sufficient to support a finding that the defendants had the intent to sell marijuana?

*Defendants' lack of standing.*

In its written opinion, the trial court ruled with respect to the motion to suppress as follows: "The real question involved on this motion is whether the search of the package by the police while in the hands of REA is a search which infringes on the right of the defendants to be free of unlawful searches and seizures." The trial court concluded that "for the reasons expressed in *Corngold v. United States* (9th Cir. 1966), 367 Fed. 2d 1, the search was an illegal one at least as against the sender or anyone else who had standing to question the search." But the trial court ruled, however, that Suzor, Christel, and Tetzlaff did not have the requisite standing.

Suzor and Christel contend they have "automatic" standing to challenge the search of the package at the

REA office prior to its delivery by REA. They rely on the decision in *Jones v. United States*.[1] *Jones* involved a prosecution for violation of federal narcotics laws. Possession of narcotics was the basis of the government's case against Jones. Federal narcotics agents arrested Jones in an apartment in the course of executing a warrant to search for narcotics. The agents found narcotics in a bird's nest in an awning just outside a window in the apartment and secured an admission from Jones that he was living in the apartment and that some of the narcotics were his.

Jones moved to suppress the evidence obtained in the execution of the search warrant on the ground that no showing of probable cause had been made to obtain the warrant. The government opposed Jones' standing to bring the motion because Jones had failed to allege either ownership of the seized contraband or any interest in the apartment greater than that of a mere invitee. The district court denied Jones' motion to suppress solely on the ground of Jones' lack of standing. The court of appeals affirmed the district court's ruling on the motion to suppress. The United States Supreme Court reversed.

The court began its analysis by noting:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. . . .

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. . . ."[2]

---

[1] (1960), 362 U. S. 257, 80 Sup. Ct. 725, 4 L. Ed. 2d 697.

[2] *Id.* at page 261.

The court observed that to establish standing it had generally been required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched.[3] This created an inescapable self-incrimination dilemma in narcotics prosecutions charging possession. A defendant attempting to comply with the conventional standing requirement was obliged to allege facts attesting to possession, the proof of which at trial would tend to convict him. The other traditional standing requirement that the movant establish a substantial possessory interest in the premises searched greater than the interest of an invitee or guest had also proved troublesome. Courts had been obliged to draw exceedingly subtle distinctions among the various classes of possessors in determining whether a particular movant had the requisite dominion over the premises searched to object.[4]

In order to remedy this situation, the court announced alternative grounds of standing in "possession" cases, which amounted to a relaxation of the traditional standing requirements. The court held, first, when possession of the seized evidence is itself an essential element of the offense charged, the government is precluded from denying the movant has the requisite possessory interest to challenge the admission of the evidence, and, second, the movant need have no particular possessory interest in the searched premises in order to have standing so long as he is legitimately on those premises when the search takes place.[5]

---

[3] *See* Annot. (1960), 4 L. Ed. 2d 1999.

[4] *See* 79 C. J. S., *Searches and Seizures,* pp. 789, 790, sec. 12; Annot. (1961), 78 A. L. R. 2d 246; White and Greenspan, *Standing to Object to Search and Seizure,* 118 U. Pa. L. Rev. 333 (1970); Note, *Standing to Object to an Unreasonable Search and Seizure,* 34 U. Chi. L. Rev. 342 (1967).

[5] The *Jones* rationale for automatic standing is stated as follows: ". . . to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises

Suzor and Christel argue the principle of "automatic" standing enunciated by *Jones* should be broadly construed to confer standing to challenge an allegedly illegal search on anyone charged with a crime of possession as a result of the search. The state maintains, however, that *Jones* only applies where the accused's possession of the contraband *at the time of the search* is the subject of the prosecution and not where the prosecution is founded on possession at some time *after* the challenged search, as in the instant case. The state argues that since Suzor and Christel did not come into possession of the package until sometime after the challenged search occurred and were prosecuted for that subsequent possession, they cannot claim the benefit of the *Jones* rule of automatic standing. The state submits Suzor and Christel were required to meet the traditional standing requirement of establishing a possessory interest in the package as of the time of the search at the REA office. In making this latter argument, the state maintains Suzor and Christel did not demonstrate they had the requisite possessory interest in the package as of the time of the challenged search and thus could not predicate standing on this basis either.

---

prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing . . . ." *Jones v. United States, supra,* footnote 1, pp. 263, 264.

Since the decision in *Jones*, the United States Supreme Court has three times discussed the doctrine of "automatic" standing. Under the current prevailing interpretation, the state is correct in its limitation of *Jones*. In *Simmons v. United States* [6] the court reaffirmed the *Jones* doctrine but went a long way toward eliminating the need for such a rule by declaring that a prosecutor may not use against a defendant at trial any testimony given by that defendant at a pretrial hearing to establish standing to suppress evidence. Thus, *Simmons* virtually cured the self-incrimination dilemma which prompted the institution of the automatic standing rule in the first place. In *Combs v. United States* [7] the court once again reaffirmed the *Jones* rule. A very recent case, however, considerably undercuts the viability of the *Jones* standing doctrine. *Brown v. United States* [8] involved a federal prosecution for transporting stolen goods and conspiracy to transport stolen goods in interstate commerce. The petitioners had stolen goods from the warehouse of their employer and stored them in a warehouse owned by a co-conspirator. In the course of taking yet another truckload of stolen goods to the warehouse of their fellow-conspirator, the petitioners were stopped by the police, placed under arrest and taken into custody along with the contents of the truck. The police then searched the warehouse where they were headed pursuant to a warrant and discovered the stolen goods which had previously been transported there. The warrant was defective, however. The petitioners moved to suppress the stolen goods found at the warehouse but were unsuccessful. The court held they lacked standing. Petitioners claimed automatic standing predicated on *Jones*. The court grounded its ruling on petitioners' failure to allege any proprietary or

[6] (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247.
[7] (1972), 408 U. S. 224, 92 Sup. Ct. 2284, 33 L. Ed. 2d 308.
[8] (1973), 411 U. S. 223, 93 Sup. Ct. 1565, 36 L. Ed. 2d 208.

possessory interest in the premises searched or the goods seized there. At trial, the stolen goods found at the warehouse were introduced in evidence and the petitioners were convicted. On appeal, the question was raised whether petitioners were entitled to the automatic standing conferred by *Jones* in possession cases. In holding that *Jones* did not apply and that petitioners were bound to comply with traditional standing rules, the court announced the following rule for the guidance of lower courts:

". . . Here, unlike *Jones,* the Government's case against petitioners does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure. The stolen goods seized had been transported and 'sold' by petitioners to Knuckles approximately two months before the challenged search. The conspiracy and transportation alleged by the indictment were carefully limited to the period before the day of the search.

"In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The Government cannot be accused of taking 'advantage of contradictory positions.' *Jones v. United States, supra,* at 263. See *United States v. Allsenberrie,* 424 F. 2d 1209, 1212–1214 (CA 7 1970) ; *United States v. Cowan,* 396 F. 2d 83, 86 (CA 2 1968) ; *Niro v. United States,* 388 F. 2d 535, 537 (CA 1 1968) ; *United States v. Bozza,* 365 F. 2d 206, 223 (CA 2 1966). But cf. *United States v. Price,* 447 F. 2d 23, 29 (CA 2), cert. denied, 404 U. S. 912 (1971).

"Again, we do not decide that this vice of prosecutorial self-contradiction warrants the continued survival of

*Jones'* 'automatic' standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such 'automatic' standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction. Petitioners were afforded a full hearing on standing and failed to allege any legitimate interest of any kind in the premises searched or the merchandise seized." [9]

The instant case is controlled by *Brown.* Suzor and Christel, similarly, "were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." The possession with which they were charged existed only subsequent to the challenged search. Thus, the prosecution was not taking advantage of "contradictory positions" in opposing their standing to challenge the search. The instant case does not fit within the narrow confines of the standing rule as limited by *Brown.*

Appellants cite *United States v. West* [10] and *United States v. Price* [11] in support of their claim to "automatic" standing. Both of these cases were decided before the decision of the United States Supreme Court in *Brown,* and therefore are no longer of persuasive weight. *United States v. Durkin* [12] is also inapposite. In that case, standing to challenge an allegedly illegal search was founded upon the fact that defendants had possession of the premises searched and the goods seized at the time of the search. Thus the case fell squarely within the *Jones* limitation that standing flows from possession at the time of the search. The instant situation is clearly distinguishable.

[9] *Brown v. United States, supra,* footnote 8, at pages 228, 229.

[10] (3d Cir. 1972), 453 Fed. 2d 1351.

[11] (2d Cir. 1971), 447 Fed. 2d 23, certiorari denied (1971), 404 U. S. 912, 92 Sup. Ct. 232, 30 L. Ed. 2d 186.

[12] (D. C. N. Y. 1971), 335 Fed. Supp. 922.

Notwithstanding the difficulties associated with claiming "automatic" standing, Suzor and Christel maintain, alternatively, that the trial court erred in holding they had failed to establish a possessory interest in the package. Had they been able to do so, they would have been entitled to predicate standing on their possessory interest alone.[13]

The trial court ruling that Suzor and Christel had failed to carry the burden of establishing any proprietary or possessory interest in the package is grounded in a finding that the list found inside the package is too cryptic to raise an inference of ownership without corroboration. The list was found inside a sealed envelope which itself was inside the package. This list was nothing more than a column of first names with numbers entered opposite each name. Although it is true there is a correspondence between the first names on the list and the first names of Suzor and Christel, the parties failed to offer any testimony at the hearing on the motion to suppress to explain this correspondence or to prove up in any way their claim of a proprietary interest in the package. They chose to let the list do their talking. In view of the fact that the package was addressed to Catherine Baldwin, it might be presumed she was the sole owner of it. Absent some explanation from Suzor or Christel as to the significance of the list found inside the package, the trial court was obliged to give effect to this presumption. Standing alone, an inference of ownership suggested by a cryptic list was insufficient to overcome the presumption attendant upon the addressee designation on the package. Thus, it appears the trial court was correct in holding that Suzor and Christel had failed to carry their burden of proof on entitlement to standing.

[13] *Jones v. United States, supra,* footnote 1; 79 C. J. S., *Searches and Seizures,* p. 810, sec. 52; Annot. (1958), 61 A. L. R. 2d 1282.

Finally, Suzor and Christel argue they had standing to challenge the search at the REA office because the information charging possession on February 11th might be construed so as to charge them with constructive possession a few hours earlier at the REA office, in which case *Jones* would be directly applicable. However, it is difficult to see how Suzor and Christel could be regarded as having had constructive possession of the package while it was in the custody of REA. It was not addressed to them and they were completely unaware the package had even arrived at the REA office. Wisconsin Jury Instructions—Criminal, Part II, 6030 (which the trial court gave) defines possession of marijuana in the following terms:

"A person is in the possession of marijuana when he knowingly has it under his dominion and control. Knowingly storing or keeping marijuana in a place under the dominion and control of a person is possession by him. Physical possession is not necessary nor need it be shown that the defendant had sole and exclusive possession."

*Curl v. State* [14] is substantially in accord. ". . . 'Possession' may be constructive possession, meaning that the item is immediately available and under the control of the persons charged with the crime."

In view of the foregoing, Suzor and Christel cannot maintain they might have been charged with constructive possession as of the time of the search at the REA office.

*Evidence of knowledge of drug and of intent to sell.*

The second and third issues can be discussed together. Suzor and Christel claim the evidence was insufficient to prove they knew or believed the package contained marijuana and so an essential element of the offense remained unproved. Moreover, they claim the evidence

[14] (1968), 40 Wis. 2d 474, 482, 162 N. W. 2d 77.

was also insufficient to establish that they possessed the requisite intent to sell.

The standard utilized in reviewing the sufficiency of the evidence is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt.[15] The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the required degree of certitude by evidence which it had a right to believe and accept as true. In order to warrant reversal, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that no trier of the facts, acting reasonably, could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt."[16] Much of the evidence relied on by the state to establish the offense was circumstantial. Although Suzor and Christel maintain that the law in Wisconsin is that the evidence must be inconsistent with *any* hypothesis of innocence,[17] the law is to the contrary, as we recently stated in *State v. Shaw:*[18]

"The evidence does not have to remove every possibility before a conviction can be sustained. *See State v. Eberhardt* (1968), 40 Wis. 2d 175, 161 N. W. 2d 287. The test stated in *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379, is 'that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main

---

[15] *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379; *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183; *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349; *Johnson v. State* (1972), 55 Wis. 2d 144, 197 N. W. 2d 760.

[16] *Lock v. State, supra,* footnote 15; *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808.

[17] Citing *State v. Hall* (1955), 271 Wis. 450, 73 N. W. 2d 585.

[18] (1973), 58 Wis. 2d 25, 29, 205 N. W. 2d 132.

fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged.' The circumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility. . . ."

Under sec. 161.30 (12) (d), Stats. 1969, the prosecution must prove not only that the defendant is in possession of a dangerous drug but also that he knows or believes that he is.[19] Thus, as to the first evidence question raised on this appeal here, the prosecution was required to show that Christel and Suzor knew or believed the package in their possession contained marijuana.

The jury was entitled to infer knowing possession on the basis of the evidence that Suzor, who did not reside at the apartment to which the package was delivered, signed for the package even though he was not the addressee, and then left the apartment with the package, in the company of Christel, who had arrived just moments earlier. This inference is justified for the reason that normally one does not purport to sign for a package addressed to someone else, and then depart the premises with the package in one's possession, particularly when the addressee of the package is not on the premises when the package is delivered.

As to the remaining evidence question, there is sufficient evidence to show the defendants' intent to sell. There was testimony at trial that the seized hashish found in the possession of Suzor and Christel had a street value of approximately $35,000.

*By the Court.*—Order and judgments affirmed.

---

[19] Wis J I—Criminal, Part II, 6030, and cases cited there (Wis J I—Criminal, Part II, 1481, Note 2) ; *see also: Wright v. Edwards* (5th Cir. 1972), 470 Fed. 2d 980.