TYACKE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 133. Submitted October 3, 1974.—Decided November 26, 1974.*
(Also reported in 223 N. W. 2d 595.)

The cause was submitted for the plaintiff in error on the briefs of *Anthony K. Karpowitz*, Legal Aid Society of Milwaukee.

The cause was submitted for the defendant in error on the brief of *Robert W. Warren*, attorney general, and *David J. Becker*, assistant attorney general.

DAY, J. The defendant, Douglas G. Tyacke, was convicted on August 9, 1973, after a trial to the court, of attempted burglary, party to a crime, under secs. 943.10 (1) (a), 939.32 and 939.05, Stats. He was sentenced for an indeterminate term of not more than four years. A motion for new trial was heard on December 6, 1973, and an order denying that motion was entered July 31, 1974. This court issued a writ of error to review the judgment of conviction on December 10, 1973, and a writ of error to review the order of July 31, 1974, denying a new trial, on August 19, 1974.

This case presents three questions: (1) Could the trial court properly disregard portions of the testimony of the state's witness exonerating the defendant from participation in the crime where such witness had already been convicted and sentenced for the burglary in question; (2) was there sufficient credible evidence to support the conviction of the defendant of the crime of burglary; and (3) was it error for the court to deny the defendant's motion for a new trial?

The defendant was convicted of an attempted burglary of Zep's liquor store. The liquor store is located in the northeast corner of the intersection of South Packard Avenue and East Hammond Avenue in the city of Cudahy, Milwaukee county. The store fronts on South Packard, the south side of the building faces East Hammond Avenue. On the early morning of July 29, 1971, Mrs. Clara Schultz of 3633 East Hammond Avenue was looking out her dining-room window toward Zep's liquor store building. Her home on East Hammond Avenue is across the street and somewhat east of the Zep building so that she had a view of the south side and the east

rear of that structure. At a time she estimated at 3:30 a.m., she saw two men approaching the building, one coming from the alley and one from the front of the building. They were walking around, looking at the building. She woke her daughter Janet Schultz and said "Should I call the police, it looks like the liquor store is going to be robbed?" The daughter came to the window and looked out and Mrs. Schultz went to the kitchen and called the police. While she was calling the police, she heard the sound of breaking glass. She then went back to the window, saw the police approach and saw one of the two men attempt to run away and saw the other man, which later testimony proved to be the defendant, in custody of an officer. The daughter Janet testified that when her mother called to her, she went to the window and saw two shadows in the bushes that were growing along the building by the side windows of the liquor store and that while her mother was making the phone call, she heard two sounds of breaking glass. She said the sounds came from the side window of the liquor store and that because the Schultz's windows were open, she could hear the sounds. She stated that when her mother returned from the kitchen after calling the police, the police were already there. She saw someone run toward Packard Avenue.

Officer Roger Timm, a policeman with the Cudahy police department, testified that on the morning in question at 4:42 a.m. he was dispatched to the liquor store; that he parked his car on East Hammond Avenue about 40 feet from the south end of the building. He saw two figures between the liquor store and some bushes which were growing along the south side of the liquor store. As Officer Timm approached, he noticed the defendant had his right hand against the storm windows which were standing alongside the building. He ordered both men to come out with their hands up. The defendant put his hands up, but the other man at the

scene, John Dishinger, started to cry and attempted to flee but was taken into custody. After the defendant was taken into custody, Officer Timm returned to the scene and found a black screwdriver, on the ground near the spot where the defendant had been standing. Dishinger later identified the screwdriver as like the one he had used at the scene. Two large storm window frames were leaning against the building; one was broken, and there were putty and glass on the ground. Dishinger's fingerprints were later found on the glass. Officer Timm also testified that there was a pane of glass broken on the inside window from which the storm window had been removed.

The state then called John Dishinger, aged twenty-one, who had previously pleaded nolo contendere to this burglary and had been given eighteen months' probation. The probation had been terminated to allow Dishinger to join the army, where he spent six months and received a general discharge. Dishinger's plea to the burglary count had been entered October 15, 1971. Dishinger testified that on the morning in question he had been driving around with the defendant for about three hours; that they had argued over the attentions which Dishinger's girl friend had paid the defendant earlier, prior to the time Dishinger took her home. Dishinger said he made up his mind to burglarize Zep's liquor store, intending to take liquor, not money. He did not park his car at Zep's "because there had been a car there." He said he parked one or two blocks from Zep's, got a screwdriver out of his toolbox located in his car, but that defendant did not know he got the screwdriver. He left defendant in the car and told him he was going into the alley to relieve himself. Dishinger said he did not want defendant to know of his intention to burglarize the liquor store and did not tell defendant of his intent.

Dishinger said he then walked through the alley to the liquor store, which was a block or two away. While he

was at the liquor store, defendant walked up to him, asked him what he was doing and he had replied it was none of defendant's business. The defendant asked Dishinger if he wanted to go back to prison and Dishinger told him that was not any of his business either. The defendant tried to get the screwdriver away from Dishinger by pulling on his arm and Dishinger testified he threw the screwdriver on the ground so that neither of them would get hurt. They started arguing about the girl friend; and defendant was arguing both about going back to prison and about the girl friend. He said the argument lasted with defendant for five or six minutes; that he took a swing at defendant; and they wrestled on the ground. He testified that he had removed storm windows with the screwdriver; but he could not remember whether it was one or two windows; one was broken during that time. At the trial, Dishinger identified the screwdriver which was found at the scene as the same type he had with the same colored handle. Dishinger further testified that he left the scene to put the glass which had been removed from the storm window into his car and that he did this for fear his fingerprints were on the glass. The defendant was alongside the building when he decided to take the glass to his car and the defendant stayed there looking for the car keys because Dishinger had reached into his pocket and found that the keys were not there. He stated he put two pieces of glass in his car, returned to the store, and that defendant was looking for the keys at the place where they had been wrestling. Dishinger stated the reason he changed his mind about continuing the burglary, "I decided I didn't want to go back." He stated he forgot to take the screwdriver with him; he said he had not looked for the keys when he got back to the car with the glass and later found out the keys were in the ignition.

The defendant moved for dismissal after the state's case; the motion was denied. The defendant testified

that on the night in question he and Dishinger had been at the lakefront with a girl friend of Dishinger. He testified that she had been paying more attention to him than to Dishinger and that Dishinger had taken her home. Dishinger then drove to Cudahy and stopped the car. The defendant did not know what street it was, as he was unfamiliar with Cudahy. Dishinger got out of the car and went into the alley. After about ten or fifteen minutes, the defendant went looking for him, because he wanted to go home. He stated he walked down the alley and found Dishinger standing alongside of a building; that when defendant asked Dishinger what he was doing, he said, "It is none of your business." He grabbed Dishinger's arm and dragged him into the bushes which were alongside the building. He said they started to argue and got into a fight and that finally Dishinger "cooled off" and decided to take the defendant home. They were starting to walk down the alley toward the car when Dishinger said that he did not have his keys, so the two of them went back to the liquor store to look for the keys. Dishinger then picked up some glass which was alongside the building and took the glass to his car. He was gone "a couple of minutes." When Dishinger returned, the police came and made the arrest.

Defendant denied that he had been told in any way that Dishinger intended to commit the burglary. He said he first realized what was going on when he came upon Dishinger and noticed the screwdriver and "the damage that had been done." The storm windows had already been removed, according to the defendant, when he arrived at the scene. Defendant claimed that all he was doing when the police arrived was: "I was in the bushes —looking for a set of car keys. . . ."

There was undisputed testimony that no permission had been given by the owner to defendant to enter the premises.

The first question is: Could the trial court properly disregard portions of the testimony of the state's witness

exonerating the defendant from participation in the crime where such witness had already been convicted and sentenced for the burglary in question?

The weight and credibility to be accorded to Dishinger's testimony was for the trier of fact. In *Hemmis v. State* (1964), 24 Wis. 2d 346, 129 N. W. 2d 209, one Fogle had been arrested at the scene of the burglary. Hemmis was later found with Fogle's wife's car. At the trial of Hemmis before the court for burglary, Fogle testified for the state, as shown by the briefs in the case. He testified that he was the one who committed the burglary and his testimony exonerated Hemmis. Fogle stated that he and Hemmis came to Burlington, Wisconsin, together in Mrs. Fogle's car; that he left Hemmis at a bowling alley and that Hemmis knew nothing about the burglary and that he had given Hemmis permission to drive the car. In sustaining the conviction of Hemmis, this court, at page 354, said:

"The credibility and weight to be given the testimony of Fogle was for the trier of the fact. The trial court could disbelieve Fogle and could find the defendant guilty beyond a reasonable doubt on the evidence before him."

Defendant Tyacke in his reply brief stresses that a footprint matching the shoes of Hemmis was found at the scene of the crime and that this is what warranted disregarding Fogle's testimony in the *Hemmis Case*. At page 354, this court noted:

"The police officers testified that when the defendant sat down and crossed his legs at the police station they viewed the sole of the defendant's shoe and that it corresponded with the imprint at the scene of the crime."

This court did not say that such was the reason for disregarding portions of Fogle's testimony. It was a matter for the trier of fact to give such credibility to Fogle's testimony as the trier of fact saw fit to give.

In the case at bar, the trial court, in weighing the credibility of Dishinger's testimony, along with the other evidence presented, could take into consideration his conviction for the attempted burglary of Zep's on the morning in question. Sec. 885.19, Stats., provides:

"885.19 **Convict.** A person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer."

This court said in *Nicholas v. State* (1971), 49 Wis. 2d 683, 688, 183 N. W. 2d 11:

"The fact of prior convictions and the number thereof is relevant evidence because the law in Wisconsin presumes that one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted. . . . This presumption obtains in both civil and criminal litigation."

We conclude that the extent to which the trial court believed the testimony of Dishinger went to the issue of credibility, which was for the trier of fact.

The second question is: Was there sufficient credible evidence to support the conviction of the defendant of the crime of burglary?

This court has repeatedly said the question before this court on an issue of sufficiency of evidence to convict is not whether this court is convinced beyond a reasonable doubt of the defendant's guilt, but whether this court can conclude that the trier of fact, acting reasonably, could reach such a conclusion based on evidence it had a right to believe and accept as true. *State v. Christel* (1973), 61 Wis. 2d 143, 158, 211 N. W. 2d 801; *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.

We conclude that the recitation of facts above taken from the record and viewed in the light most favorable to the state's case was believable and the court acting reasonably had a right to accept it as true and convict the defendant of attempted burglary, party to a crime. The court received evidence of two prior felony convictions against the defendant and had a right to weigh the credibility of his testimony in light of those facts, *Nicholas v. State, supra.* Mrs. Clara Schultz testified she saw two people by the side of the liquor store and then called the police. Janet Schultz testified she saw shadows of two people by the side of the liquor store when she looked out the window. Janet Schultz and her mother both testified that they heard glass breaking while the mother was calling the police. It was reasonable to conclude that glass breakage occurred after the defendant arrived on the scene. Assuming the evidence against the defendant is in fact circumstantial, we conclude that it was sufficient for the trial court to convict. This court in *State v. Christel,* at page 158, held:

" 'The test . . . is "that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged." The cirumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility. . . .' "

The trial court could, from the evidence before it, reasonably conclude that the defendant's and Dishinger's explanation for defendant's presence at the scene of the burglary lacked probability, if not possibility, and under

all the facts and circumstances the court could conclude the evidence was inconsistent with any reasonable hypothesis of innocence.

We conclude that the evidence was sufficient to sustain a judgment of conviction at the conclusion of the state's case as well as at the end of the trial. Therefore it was not error for the trial court to deny defendant's motion to dismiss at the end of the state's case.

The elements of attempted burglary are: (1) That the defendant attempted to enter the premises in question; (2) the attempt was without the consent of the owner; and (3) that the attempt to enter was with the intent to take property of the lawful owner and retain it. *Bethards v. State* (1970), 45 Wis. 2d 606, 612, 173 N. W. 2d 634. There was sufficient evidence in the state's case to support the conviction of attempted burglary, party to a crime.

The third question is: Was it an abuse of discretion for the trial court to deny defendant's motion for a new trial?

This court has held in *State v. Simmons* (1973), 57 Wis. 2d 285, 290, 203 N. W. 2d 887:

"When an appeal is taken from an order denying a new trial, the test to be applied to the trial court's decision is whether there has been an abuse of discretion. The order will not be reversed unless an abuse of discretion has been clearly shown. *Logan v. State* (1969), 43 Wis. 2d 128, 133, 168 N. W. 2d 171; *State v. Waters* (1965), 28 Wis. 2d 148, 152, 135 N. W. 2d 768."

At the time of the motion for a new trial, the defense presented a police officer whom they claimed was unavailable at earlier hearings who testified that after the burglary he had examined Dishinger's car; that it did have two pieces of glass in it and that the car was parked one block, not two blocks, from the scene of the crime.

Defendant claims that it was an abuse of discretion for the trial court not to grant a new trial in the interest of

justice, because defendant claims the court disbelieved Dishinger's testimony about putting the window glass in his car.

At the hearing on the motion for a new trial, the judge regarded the presence of the glass in the car as an immaterial piece of evidence as far as the guilt of the defendant was concerned. We agree with the trial court. Such evidence did nothing to substantiate any testimony or produce a new fact which would tend to show that the defendant was not guilty of the crime of attempted burglary. The most that the presence of the glass did was to substantiate Dishinger's testimony as to his activities on the morning in question. The presence of the glass in Dishinger's car was set forth in the complaint in this case and testified to by Officer Timm at the preliminary hearing. The defense, when Officer Timm testified at the trial, did not see fit to ask him about the presence of the two panes of glass in Dishinger's car. We conclude there was no abuse of discretion by the trial court in refusing to grant a new trial in the interest of justice on the basis of the testimony regarding the presence of the glass in Dishinger's car. It had no probative value as to the nonparticipation of the defendant in the burglary. The testimony of the officer that the car was one block away from the liquor store instead of "one or two," as testified to by Dishinger, we regard as immaterial on the issue of the defendant's guilt. There was no abuse of discretion by the trial court in refusing to grant a new trial on the basis of the evidence presented at the motion hearing.

*By the Court.*—Judgment and order affirmed.