**UNITED STATES of America,**
**Appellee,**

v.

**Thomas SUPER and Perry Burns,**
**Appellants.**

**Nos. 626, 743, Dockets 73-2456, 73-2865.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1974.

Decided Feb. 25, 1974.

Charles E. Clayman, Asst. U. S. Atty. (Edward John Boyd, V, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Porter R. Chandler, New York City (Charles J. Moxley, Jr., New York City, of counsel), for appellant Burns.

Kenneth J. Schreiber, Kew Gardens, N. Y. (Salaway, Schreiber, Teller & Finger, Kew Gardens, N. Y., on the brief), for appellant Super.

Before WATERMAN and MULLIGAN, Circuit Judges and BRYAN, District Judge.*

MULLIGAN, Circuit Judge:

This is an appeal by the defendants Thomas Super and Perry Burns from judgments of conviction entered on July 6, 1973, in the United States District Court, Eastern District of New York, after a trial before Hon. Orrin Judd and a jury. Both appellants were convicted on all three counts of an indictment charging them with possessing with intent to distribute, distributing, and con-

* Frederick vP. Bryan of the Southern District of New York, sitting by designation.

spiring to possess with intent to distribute and to distribute approximately 115.2 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The Government's case here was based largely on the testimony of William McGroarty, a New York City police officer who was acting in an undercover capacity, and Ralph Montemagno, a co-defendant who pled guilty and testified for the Government. McGroarty had been introduced to Montemagno, Burns and Super by an informant, Michael Lombardi. According to the evidence presented by the Government, the sale of the 115.2 grams of heroin took place, in an apartment in Inwood, Long Island, on the evening of December 21, 1972, in the following manner. Montemagno and appellant Super met with appellant Burns and another (Doe), and they then proceeded to the apartment. McGroarty and Lombardi were waiting there when they arrived. After talking briefly with Super and Montemagno, McGroarty returned to his car while the others entered the apartment. Montemagno testified that the drugs were then "cut" in the presence of Super, Burns, Lombardi, Doe and himself. Thereafter, Burns and Doe left the apartment, and McGroarty entered and purchased the drugs from Super, giving him $3100 in fifty and twenty dollar bills. McGroarty left the apartment and placed the drugs in his car. He then walked over to a car parked in front of the apartment. He testified that he observed Burns seated in the car counting fifty dollar bills, with a wrapper of twenty dollar bills beside him on the seat. When McGroarty told Burns that he wished to buy up to a pound of heroin, Burns replied that "there would be no problem" and that he should speak to Super, who was seated in the rear of the car. This direction resulted in negotiations for the sale of a half pound of heroin on January 2, 1973. The prospective sale was aborted, however, when Burns insisted on payment of one-half of the purchase price in cash in advance. This transaction involved essentially the same cast of characters, McGroarty, Lombardi, Super and Burns.[1]

The principal argument raised on appeal by both appellants relates to the failure of the Government to produce the informant Lombardi as a witness at the trial. Appellants argue that the Government failed to carry out its duty to make the informant available. Appellant Burns also contends that the court's charge was erroneous in preventing the drawing of an inference from the absence of Lombardi, and that the Government inadequately discharged its obligation to provide Burns with Lombardi's last known whereabouts.

On May 24, 1973, the Assistant United States Attorney in charge of the prosecution advised the court and trial counsel for the defendants that a confidential informant was involved in the case, that he was no longer within the control of the Government and that his whereabouts were unknown. Lombardi's name and his last known address were provided to defense counsel. On May 29, 1973, defense counsel announced to the court that they had attempted but had been unable to find Lombardi over the intervening weekend. The court stated that the defense would be permitted, out of the hearing of the jury, to inquire into the Government's ability to find the informant and the judge also permitted the subject of the informant's whereabouts and activities to be raised on cross-examination. When McGroarty was cross-examined, he testified that he had seen Lombardi three weeks before but did not know his present whereabouts. He further indicated that Lombardi might be either on Long Island or in Florida, and that the only way he might find Lombardi was if he were to "hang around" some Suffolk County

1. The movements into and out of the apartment on December 21 were observed by an officer, whose testimony tended to corroborate McGroarty's description of the events.

The presence of the appellants at the unsuccessful transaction on January 2 was observed by two Government agents who were conducting a surveillance.

bars and wait till he appeared. Despite the court's willingness to allow it, neither appellant sought to question the prosecution about its ability to locate Lombardi or to examine the extent of its knowledge of his whereabouts, and neither sought a continuance for the purpose of conducting a search. No request was made for the assistance of the Government in the effort to locate Lombardi. Instead, trial counsel for both appellants made much of the failure of the Government to present Lombardi at trial, demanding that the Government produce him and commenting at length on his absence in summation. Over objection of the appellants, the trial court charged the jury that the Government was not required to produce Lombardi and that no inferences for or against the defendants should be drawn by reason of the Government's failure to call him.

█ The argument made on appeal is premised on the proposition that the Government, which allegedly was obligated to make Lombardi available, could have located him, and that, since he was therefore available to the Government, the failure to call him required a charge that the jury could infer that his testimony would have been damaging to the Government's case. The difficulty with the argument is that the availability of Lombardi to the Government is not apparent in the record. On the contrary, on the eve of trial the Government did advise defense counsel that a confidential informant was involved, provided his name and last known address, and stated that he was not within the control of the Government and that his present whereabouts were unknown. This fully complied with the obligation of the Government under Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). As this court indicated in United States v. Cimino, 321 F.2d 509, 512 (1963), cert. denied, 375 U.S. 974, 84 S. Ct. 491, 11 L.Ed.2d 418 (1964), the Government need only identify its informant, it need not produce him. United States v. Ortega, 471 F.2d 1350, 1358–1359 n. 2 (2d Cir. 1972). Cf. Note, Duty of the Prosecutor to Call Witnesses Whose Testimony Will Help the Accused to Establish His Innocence, 1966 Wash. U.L.Q. 68.

█ On trial, the defense did not seek to establish that the Government had failed to use reasonable diligence in its search for Lombardi.[2] It did not seek to question the Government out of the presence of the jury in an effort to determine what search had been made or what search might be productive if a continuance were granted. See United States v. Mosby, 422 F.2d 72, 74 (8th Cir.), cert. denied, 399 U.S. 914, 90 S.Ct. 2217, 26 L.Ed.2d 571 (1970). Although the defense might thus have established in the record some basis for concluding that Lombardi was in fact available to the Government, it chose to forego that approach and simply decided to use the failure of the Government to produce Lombardi on summation to the jury as an indication that the Government's case was therefore suspect.[3] There is noth-

2. The argument made here that the United States has greater funds and more agents at its disposal than the defendant could, of course, be made in any case. The point is that the Government proceeded to prove its case without Lombardi, and a nation-wide manhunt was presumably not in its interest. There is no indication at all that the Government was hiding Lombardi, or that its protestation that his whereabouts were unknown was made in bad faith.

3. In summation to the jury, counsel for appellant Burns said:

Mike Lombardi has not been here, Mike Lombardi has not testified. Mr. Pascarella, before the trial began, gave us Mike Lombardi's name for the first time on the date the jury was selected and he told us that Mike Lombardi's last known address was a certain address on the island, but that he is not there any more and they can't find him. So we had the task of trying to find him.

I ask you, ladies and gentlemen, if the United States Government, with all their agents, and there were many just in this case, cannot find Mike Lombardi, how are we going to find Mike Lombardi?

ing in the record to rebut the Government's position that Lombardi's whereabouts were unknown.

Informants in drug cases are not Brahmins, nor are they noted for long-term occupancy of well-tended premises. Their disappearance, voluntary or otherwise, is not extraordinary. The fact that a police officer knew that Lombardi was an habitué of Suffolk County bars or that he might be in Florida is hardly indicative that the Government in fact could find him. In any event, as we have stated, defendants' trial counsel did not show any real interest in finding him, but rather were satisfied to exploit his absence to the jury. There is no claim here that Lombardi would have been called as a witness for the appellants. See United States v. Comulada, 340 F.2d 449, 452 (2d Cir.), cert. denied, 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965). There is no suggestion that Lombardi entrapped the defendants and

Mike Lombardi allegedly is an agent or —I'm sorry to say an agent, is an informer that is working with them for a period of time. They know this case is going to trial. They know that Mike Lombardi allegedly was part of this scheme, if there was a scheme. Yes, Mike Lombardi is not here and we are told at the eve of trial, not a week before, not two weeks before, because it was known that this case was going to trial two or three weeks ago, we were not told, "Well, Mike Lombardi is missing, fellows. You want to go looking for him?" We are told when we are going to start the trial. The only time we had was the weekend, and the weekend we are supposed to find a guy by the name of Mike Lombardi that the agents couldn't find.

And only in the testimony, when McGroarty testified, because that's the first time he ever testified when I was on the other side asking questions, do we learn that Mike Lombardi is down in Florida. We were not even told this on Thursday when we find out Mike Lombardi's last address is someplace I think in Northport, Long Island. We are not told he is in Florida, go and find him.

The United States Government can't find him, or can they? But we are supposed to go out and find him. The Government is being honest with us, "Here fellows, we are telling you, we don't know where he is. You want him? Sure he was active in this scheme, he was involved, but we can't find him. Sorry, fellows. You go out and see if you can find him and then after you find him, if you want to put him on the stand of course we have no objection." Wonderful. Where is Lombardi?

Lombardi was part of this scheme. Why wasn't Lombardi held in protective custody if there was a chance he was going to leave the jurisdiction? If McGroarty saw him three weeks before, why didn't they hold him, why didn't they keep him, why didn't they find out where he is going to be?

Counsel for appellant Super argued to the jury as follows:

As a matter of fact, this whole transactin would not have occurred if it were not for Lombardi. According to their testimony, Mike Lombardi introduced him to every participant here. Mike Lombardi set it up. Where is Mike Lombardi?

Sure, we received his name Thursday. We received his name. We received an address. They say he's not available.

The agent testified he's his informant; he works for him. I submit he's an agent that works for him and he works for the government.

He also testified the only contact he has is when the informant calls him. Well, use your common sense. Does the informant decide when something is operational or something is important? The government agents determine when something is operational or may be important or that Lombardi might be utilized. Use your common sense.

Is there a possibility that Lombardi, during all the course of the preparation for trial here might have been presented to you or might have been made available to us, or at least been in a position where somebody could subpoena the witness who is so important that he set up each and every step, and then any possible doubt that may exist could be resolved one way or the other, or whether you believe him or not, but at least hear his testimony. Was he there?

Perhaps they don't want to expose Mike Lombardi to you. Perhaps Mike Lombardi is not the type of individual you would believe. And even if he basically substantiated everything that took place, you would have to dismiss his testimony. Perhaps he's that despicable type of person that you—I don't know; you don't know. I submit if you don't know and you think it's important, you can consider the lack of the evidence as well as the evidence, and you can consider that when determining whether or not a doubt exists, if that doubt is reasonable.

that his evidence was therefore crucial to the establishment of a defense. Velarde-Villarreal v. United States, 354 F. 2d 9 (9th Cir. 1965); United States v. Clarke, 220 F.Supp. 905 (E.D.Pa.1963). All that the record indicates is that counsel for the defendants wanted to interview Lombardi to see if he might be suitable as a witness. In sum, we have no reason to believe that his evidence would have been anything but cumulative. United States v. D'Angiolillo, 340 F.2d 453, 456 (2d Cir.), cert. denied, 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965).

At the outset of the trial, Judge Judd indicated that if Lombardi were equally unavailable to both sides, the jury should not draw an inference one way or the other. A determination that he was equally unavailable was a finding he could properly make here. See United States v. Bergman, 354 F.2d 931, 935 (2d Cir. 1966); United States v. D'Angiolillo, *supra*, 340 F.2d at 457. Under all the circumstances, we find no reason to question the fact that Lombardi was in fact missing, that he was not under Government control and that his whereabouts were unknown. Therefore, the charge of Judge Judd that no inferences might be drawn by the jury either for or against either party by virtue of Lombardi's absence was proper.

■ Appellant Burns argues that evidence of the abortive January 2, 1973 transaction was improperly admitted. The court below charged the jury that the incident of the second drug deal could "be considered as probative of the participation of the two defendants who were there in the conspiracy or of being conspirators." The evidence regarding this incident was probative of the prior drug conspiracy, and, under United States v. Nathan, 476 F.2d 456, 459–460 (2d Cir. 1973), was clearly admissible. In *Nathan,* we held that "evidence of a conspirator's post-conspiracy activity is admissible if probative of the existence of a conspiracy or the participation of the alleged conspirator." Id. at 460. Appellant Burns seeks to distinguish *Nathan* on the ground that the conspiracy charged there was lengthy and involved multiple parties. *Nathan,* however, is not so limited. Under *Nathan,* evidence such as that at issue here is admissible; its weight is for the jury. In this case, the subsequent drug transaction, coming on the heels of the prior enterprise which provoked the aborted second sale, was certainly probative of the prior venture of the parties. See United States v. Wentz, 456 F.2d 634, 637 (9th Cir. 1972); United States v. Price, 447 F.2d 23, 30–31 (2d Cir.), cert. denied, 404 U.S. 912, 92 S.Ct. 232, 30 L. Ed.2d 186 (1971); Feyrer v. United States, 314 F.2d 110, 112–113 (9th Cir. 1973), cert. denied, Feyrer v. Baldt, 381 U.S. 940, 85 S.Ct. 1774, 14 L.Ed.2d 703 (1965). This is particularly so here since appellant Burns on appeal raises the question as to whether or not his identification as a participant in the *first* charged conspiracy was sufficiently established.

In our view, no other points raised on appeal deserve discussion. We commend Porter Chandler, Esq., assigned counsel for appellant Burns, for the painstaking professional skill he brought to the briefing and argument of this appeal.

Affirmed.