**UNITED STATES of America,**
**Appellee,**

v.

**Felix Davila WILLIAMS, Defendant,**
**Appellant.**

**No. 73–1006.**

United States Court of Appeals,
First Circuit.

Submitted Feb. 6, 1974.

Decided May 2, 1974.

Nicolas Nogueras, Jr., San Juan, P. R., on brief for appellants.

Jorge Rios Torres, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., and Jose A. Anglada, Asst. U. S. Atty., were on brief, for appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

After a jury trial Davila Williams was convicted on three counts of distrib-

uting, and possessing with intent to distribute, heroin and cocaine. 21 U.S.C. § 841(a)(1). The government's principal witnesses were three undercover agents who testified that Davila Williams sold heroin to one of them on November 7, 1971, and cocaine to another on November 21. Each of the sales was witnessed by the other agents. The gift of a sample of cocaine to one of the agents on November 7 was the third offense.

The agents stated that on both dates Osvaldo Santiago, a paid informer arrested previously by one of the agents, had tipped them off to Davila Williams' interest in dealing, and that he was present at the transactions. Another informer, Ruben Rodriguez Tirez, was said to have been present at some of the events on November 7. The government never called either informer,[1] although just before the jury was empanelled it provided Davila Williams with their names and last reported addresses.

We discuss below the alleged errors assigned by appellant. None of them warrants reversal.

### The Absent Informants

■ Davila Williams urges that the failure of the government to provide him with the identities of the informers "within reasonable time and promptly before trial date" denied him due process of law. He supports his argument by reference to a document dated April 11, 1972, entitled "Omnibus Hearing Report", negotiated by an Assistant U. S.

Attorney and defense counsel. The District of Puerto Rico was experimenting with the omnibus pretrial procedure. The parties were to discuss the case, complete the lengthy questionnaire and present it to the magistrate for approval. Compliance was not full: many questions on the form went unanswered, some were answered inappropriately, and the form was never presented to the magistrate.[2] The questionnaire, in the section "Motions Requiring Separate Hearing", requires "The Government to state (1) There (was) (was not) an informer . . . involved." Neither parenthesis was checked. Instead, "informer" was underlined and next to the sentence was typed:

"INFORMATION NOT AVAILABLE AT THIS TIME." [3]

Davila Williams argues that this response, when read in the context of a general proviso that all requests for discovery "ordered above" are continuing ones, and that all such information coming to the attention of either party shall be made available promptly to the opposing side, committed the government to inform him well in advance of trial of the informers' identity and whereabouts. We cannot go so far.[4] Nowhere in the form did the government agree to supply that information, and the information was never "ordered", as might have been the case had the parties appeared before the magistrate. The notation "INFORMATION NOT AVAILABLE AT THIS TIME" is unrevealing. While we do not

1. The only other eyewitness mentioned in the agents' testimony was a co-defendant, Agustin Cruz Carrasquillo. By the time of Davila Williams' trial Cruz Carrasquillo had pleaded guilty to charges stemming from events on November 7, 1971, but had not yet been sentenced. He was not called.

2. The space provided for the magistrate's signature is blank, and there is no indication in the record that he took any part in the negotiations.

3. In response to the next question the government indicated that it would not call the informer as a witness at trial. Questions requesting the government to choose between supplying the informer's identity and

claiming "privilege of nondisclosure" were left blank. The next line reading "Hearing on privilege set for ———" was not filled in. In response to another query the government indicated that it was unwilling to disclose in advance the names of witnesses.

4. Defense counsel sought to demonstrate that the parties understood that the government had agreed to provide the information in advance of trial. However, an Assistant U. S. Attorney denied that any such understanding was reached, and testified that he informed an associate defense counsel that a separate and specific request would be required to obtain the information. The upshot of the matter, is, in our minds, inconclusive.

condone the government's foot-dragging, the defense had no reason to conclude that the incomplete form, which it signed, imposed a self-enforcing duty upon the government. Nearly seven months elapsed between April and the trial, during which time the defense did not seek the assistance of magistrate or court either in carrying through with the omnibus procedure or in learning more about informers. We do not think the inconclusive efforts in April materially affected the rights of the parties at trial.

■■ Nor can we say that the government in these circumstances had a duty to volunteer before trial the names and whereabouts of informers, *see* Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1956).[5] *Cf.* United States v. Richter, 488 F.2d 170 (9th Cir. 1973). When the informers' names and addresses were furnished, defense counsel moved for a continuance and, in the alternative, argued that the government should produce the informers. The court denied a continuance, pointing out that it was Wednesday, that the trial would carry over beyond a forthcoming three day weekend, and that there would be ample time for defendant to interview the two witnesses, both of whom resided in Puerto Rico. In fact, the presentation of evidence continued into the middle of the next week, with arguments and charge on the

Thursday following. Under the facts, the district court did not abuse its discretion in denying a continuance; and, given its reasonable expectation that the defense would have access to the witnesses, there was no reason then to explore the alternative suggestion that the government be ordered to produce them.

The trial then proceeded; in its course one of the agents mentioned on cross examination that he had last seen Osvaldo Santiago on January 4, 1972, and did not personally know where he could now be located. Another agent testified that he did not know whether the informers were at their former addresses, and that the names of informers had been held back even from the United States Attorney (apparently confirming an earlier statement by the prosecution that it had first known of the informers only by numbers). The defense formally rested on Wednesday, October 11 (a week after the informers' names and addresses had been provided) without having made any mention of its efforts to locate and interview the informers. It did not tell the court that it had failed to locate them, did not request the government to find or produce them, and did not indicate any further desire to interview or call them.

After closing arguments on the day following, the subject of the informers again arose, this time in connection with defendants' request, which was denied, for a missing witness instruction.[6] The

---

5. Had a motion been made, and even in its absence, it would ordinarily be better practice to provide before trial any information or assistance required by *Roviaro*. If names and addresses are furnished at the last minute, the defense may be entitled to a continuance to locate and interview the informers if the government does not produce them. The government—and the district court when ruling upon a pretrial motion—should weigh any special circumstances, such as the informers' safety, against the disruption of the trial and prejudice to the defendants from withholding names and whereabouts until the eve of trial.

6. The requested instruction was:
"a) 'There is a recognized legal presumption that a party will produce evidence which is favorable to him if such evidence exist [sic] and is available. And the mere withholding or failing to produce material evidence which is available and would, in the circumstances of the case, be expected to be produced, gives rise to a natural inference . . . . that such evidence is held back because it would be unfavorable or adverse to a party withholding it'.

b) If a witness peculiarly available to one side or the other in criminal prosecution is not produced, jury can infer that his testimony would be unfavorable to party that failed to call witness, unless absence of witness is sufficiently accounted for or explained."

government argued that it had provided the names and addresses and that the fact it did not use the evidence "does not mean that we are withholding it and that it is adverse." To this defense counsel replied,

"Your Honor, number one those names and addresses were given at our request at the beginning of trial. Counsel checked out, I could not find any of the two persons that correspond to that name at those addresses but irrespective of that, number one, we believe that it was a tardy production of the names and addresses of these witnesses but in any event, these instructions goes [sic] to the fact that not calling witnesses to these transactions, not calling the informers that was certainly a most active part of this transaction, not calling them to testify by the District Attorney produces the inference and presumption that your Honor has heard and we request to be instructed to the jury."

█ The foregoing events, and their sequence, are relevant not only to the missing witness instruction (discussed below) but also to whether the government may have acquired a duty to help locate the absent informers after the defense could not find them. Though not explicitly raised on appeal, the latter question naturally arises, since the government's duty under *Roviaro* to produce names and addresses requires it to produce correct information or at least to have exercised diligence reasonable under the circumstances to locate the informer. It would be serious misconduct for the government intentionally to withhold or to falsify the *Roviaro* information. How far it must go to keep track of, or search for, an informer is less easily stated; that depends on many factors including the extent of the government's control over the witness, the importance of the witness' testimony, the difficulty of finding him, and similar matters. We do not accept a flat rule requiring production of all informer witnesses whenever the government has not disclosed their names before trial. *Compare* United States v. Jones, 492 F. 2d 239 (3d Cir. 1974) *with* United States v. Picard, 464 F.2d 215 (1st Cir. 1972). But should an informer disappear or become unavailable to the defense, we would compel the government, upon timely demand, either to locate him or make an affirmative showing satisfactory to the court why it could not reasonably be expected to do so and of its diligence generally as regards the disappearance.

█ In this case, however, we need not decide what more the government would have been required to do after the defense was unable to find the informers at the given addresses. The defense did not report its lack of success to the court until after it rested and even then did not ask for aid nor press to interview or call the informers. And although the three agents had been in court, the defense did not ask to question them outside the presence of the jury either to elicit further leads or to show the government's bad faith or lack of diligence. The case is on all fours with the Second Circuit's recent decision in United States v. Super, 492 F.2d 319 (1974) where the defense

"did not seek to establish that the Government had failed to use reasonable diligence in its search for Lombardi. It did not seek to question the Government out of the presence of the jury in an effort to determine what search had been made or what search might be productive if a continuance were granted."

Indeed, counsel's report, when it came, of his own unsuccessful search was notably laconic. Given the vigor and sophistication of the defense in other respects, it is reasonable to conclude that strategic considerations played a role in the decision not to press for the informers' presence. The defense undertook to show that the agents were confused and possibly mistaken as to Davila Williams'

identity. If anyone knew him, the informer Osvaldo Santiago plainly did. This circumstance made the latter potentially dangerous to the defendant depending, of course, on what he would say; the defense appears to have decided to use the informers' absence as the groundwork for demanding a favorable instruction without making further demands upon the government actually to bring in the witnesses. We therefore find no error in the failure of the government to do more than it did to locate or produce the informers nor, on this record, can we say that it was not diligent.

■ Finally, we find no error in the omission from the charge of a missing witness instruction. The court was entitled to find the witness equally unavailable to both sides. Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 398 (1950). The government's position was that it had given all it knew about the witnesses' whereabouts to the defense. As the Second Circuit said in *Super, supra* at 322:

> "Informants in drug cases are not Brahmins, nor are they noted for long-term occupancy of well-tended premises. Their disappearance, voluntary or otherwise, is not extraordinary. The fact that a police officer knew that Lombardi was an habitué of Suffolk County bars or that he might be in Florida is hardly indicative that the Government in fact could find him. In any event, as we have stated, defendants' trial counsel did not show any real interest in finding him. . . ."

Two of the government agents when asked professed not to know where the informants now were. There is nothing in the record to show that the latter were under government control or influence at the time of trial. *Cf.* United States v. Prada, 451 F.2d 1319 (2d Cir. 1971). *See generally* J. Wigmore, Evidence §§ 285, 1405 (3d ed. 1940); C.

McCormick, Evidence § 272 (2d ed. 1972).

### Prejudicial Publicity

■ Several days into the trial defense counsel moved for a mistrial because of allegedly prejudicial newspaper articles reporting an acrimonious exchange on the first day between defense and government counsel concerning the Omnibus Report and the government's duty, or lack thereof, to reveal the informers' names before trial. The court promptly examined the jurors in the presence of counsel. Seven admitted familiarity with the articles. Six of these, upon further questioning by the court, indicated that they had no doubts about their own continuing impartiality. A seventh said that he did, apparently from having learned, either from the article or elsewhere, that Davila Williams' co-defendant was in jail. The juror was excused, after stating that he had not discussed his doubts with the others. He was replaced with an alternate. The court admonished the jury at length of its duty to disregard what it had read. From what we can discern, the articles focussed not on the defendant but on counsels' arguments concerning their own dealings. It seems improbable that what was said could have so undermined the jury's faith in defense counsel as to prejudice the defendant. The district court was correct in its handling of the matter and, in light of the jurors' responses and its own vigorous instructions, did not err in proceeding with the trial.

### Prosecutor's Closing Remarks

■ On the day of closing argument defense counsel arrived seventy-five minutes late. After both counsel had without incident completed their summations the prosecution attempted to rebut defense counsel's argument that there had been agents' errors concerning defendant's alleged names and aliases. The Assistant U. S. Attorney argued that ev-

eryone errs, and highlighted defense counsel's lateness as an example of such error. Later, in the same vein, the prosecutor argued that a particular agent did not know that Davila Williams was called "Tamango" because agents did not know the names of "characters of the underworld, which [sic] you have is a bunch of rats with a bunch of names." Both statements were met with prompt and vigorous objections. The court instructed the jury forcefully in both instances to disregard the remarks, and, as to the latter one, reprimanded the prosecutor. Because of the court's alert and appropriate instructions we find no prejudice.

The remarks were nevertheless utterly unacceptable, for reasons stated elsewhere at wearisome length. United States v. Cotter, 425 F.2d 450, 452 (1st Cir. 1970); Patriarca v. United States, 402 F.2d 314, 321 (1st Cir. 1968), cert. denied 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969); Greenberg v. United States, 280 F.2d 472 (1st Cir. 1960). As Judge (now Chief Justice) Burger has said, such remarks are inconsistent with "the dignity of the government" and cannot be permitted. Taylor v. United States, 134 U.S.App.D.C. 188, 413 F.2d 1095, 1096 (1969). We are very likely, in the use of our supervisory power, to reverse future convictions if conduct of this sort continues.[7]

Davila Williams' final argument, that he was entitled to be provided with counsel during the commission of the crimes because it was a "critical stage", is so entirely lacking in merit as to require no further comment.

Affirmed.

---

[7]. This is at least the second case coming to our attention within a year involving conduct of this nature by the same member of the United States Attorney's staff. "It is counsel's responsibility to know the ground rules and follow them." Gibson v. United States,

403 F.2d 569, 570 n. 1 (D.C.Cir. 1968) (Burger, J.) Cf. DeChristoforo v. Donnelly, 473 F.2d 1236, 1238 n. 3 (1st Cir.), rev'd on other grounds, —— U.S. ——, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).