UNITED STATES of America, Appellee,

v.

Ralph RUSSO, Appellant.

No. 75-1362.

United States Court of Appeals,
First Circuit.

Heard May 3, 1976.

Decided Aug. 23, 1976.

Certiorari Denied Dec. 6, 1976.
See 97 S.Ct. 529.

George F. Gormley and Judith E. Diamond, Boston, Mass., with whom Harrington & Gormley, Boston, Mass., was on brief, for appellant.

William C. Brown, Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., and Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted by a jury of selling, transferring and delivering 44 counterfeit $100,000 United States Treasury bills, in violation of 18 U.S.C. § 473.

A Secret Service agent testified that, having assumed the name Marino, he was introduced to appellant in August, 1974. The agent testified that over a period of several months he sought counterfeit Treasury bills from appellant, telling him that they were to be used as collateral for a bank loan, the intent being to withdraw them prior to their maturity date so that the fraud would never be discovered. In a series of phone calls between the agent and appellant, a deal seemed close in October, 1974, but failed to materialize. In November, however, appellant contacted the agent, a meeting was arranged, and appellant provided the agent with a sample bill. This being pronounced satisfactory, further calls were made to set up the transfer of the rest. A second agent went to pick those up; he testified to arresting appellant after that transfer took place. Photos of the delivery and arrest were introduced. A number of the October and November telephone calls which had been recorded by the Secret Service agent were played to the jury. Taken at face value, these tapes showed the negotiations for the sale, culminating in an agreement (with a price of nine per cent of face value), as well as considerable knowledge of the field on appellant's part. A government expert testified to the counterfeit nature of the bills.

Appellant took the stand and admitted the substance of the facts related by the agents, including the accuracy of the taped telephone conversations. He presented a defense of lack of intent, claiming that John Ellsworth, who had introduced him to the Secret Service agent (as Marino) in August, had put him up to a scheme to defraud Marino by selling him real $100,000 Treasury bills and pretending they were fakes. Thus, appellant testified, he thought the bills were genuine. Appellant explained the phone conversations and his other statements to Marino as part of Ellsworth's scheme to defraud Marino into thinking the bills were counterfeit.[1] More-

---

1. It might seem to be the reverse of fraud to sell $4,400,000 worth of real Treasury bills to someone for $396,000. (Apparently the going rate even for stolen Treasury bills is considerably higher than for counterfeiting.) However, appellant testified that Ellsworth told him that he would spirit the bills out of his mother's safe-deposit box and, despite the "sale" to Marino, ultimately return them after Marino, having used them to procure the loan, had withdrawn them; thus the $396,000 would be just for the temporary use of the bills. The tapes, however, contained no mention of any arrangement for the ultimate return of the bills, even though the terms of the deal were otherwise worked out in considerable detail. If this account leaves something to be desired, we nevertheless think it reflects the testimony. Appellant added only that he suspected there was something "shady" about the transaction, which he variously described as a "flim-flam" of Marino and as somehow being in aid of a "$55-million international cement transaction".

over, appellant charged that Ellsworth was a government informant who, by supplying him with the contraband, had made him a conduit in a sale from the government to the government.

■ The issue of entrapment was presented to the jury under instructions which reflected the teaching of *United States v. Jett*, 491 F.2d 1078 (1st Cir. 1974), that evidence of inducement can be disbelieved or that the government's burden on predisposition can be satisfied without independent evidence. The jury's finding against appellant on this score was more than justified in light of the ease with which he had managed the transactions, his obvious knowledge of the ins and outs of counterfeiting, the implausibility of the story which he professed to believe, and especially the absence of any evidence of unreadiness. *See Kadis v. United States*, 373 F.2d 370 (1st Cir. 1970). Indeed, appellant did not in fact present a defense of entrapment: he testified not that he was corrupted into selling counterfeit bills, but that he did not (through lack of intent) commit that crime at all.[2]

■ The major argument on appeal is that fundamental fairness should bar appellant's prosecution as the conduit in a government-to-government sale. This contention falls under the intervening decision in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Justice Powell's determinative opinion in that case reaffirms the ruling in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), that the defense of entrapment is focused on predisposition. Moreover, while refusing to go so far as the *Hampton* plurality in ruling out a fundamental fairness argument in an outrageous case regardless of predisposition, Justice Powell agreed with the plurality that a

government-to-government sale with the defendant as conduit did not per se require reversal. Nor can we say that there was any outrageous police conduct in this case. The government made an offer of proof that the informant was in fact merely an introductory device, and that the actual supplier was a real counterfeiter who had subsequently been arrested and charged in another indictment. Appellant's story was implausible at best; he was less than diligent in searching out the one person (Ellsworth) who could have completely corroborated it (if it was true); and he failed to call the agent (Marino) who could have testified concerning government knowledge of Ellsworth's activities.[3] *Cf. Jett, supra,* 491 F.2d at 1081. Moreover, by appellant's own account he needed no persuasion to join a scheme to "flim-flam" Marino for some $400,000. We are convinced that it was not unfair to prosecute this case.

■ Appellant also objects to the trial court's failure to grant a continuance (after all the testimony had been heard) to allow a deposition of Ellsworth. The objection trips on defendant's own inaction. If indeed Ellsworth told appellant the bills were real, Ellsworth's crucial role in appellant's defense must have been known from the arrest and indictment eight or nine months prior to trial. Ellsworth was a business associate of appellant's and well known to him. Appellant had Ellsworth's address and phone number, and the government asserted that Ellsworth had not been and was not currently in hiding. The defense stated vaguely that it tried to get in touch with Ellsworth about two months prior to the August, 1975, trial, but there is no indication of diligence. At no time did appellant attempt to subpoena Ellsworth.

The fact that Ellsworth may have been an informant does not help appellant here.

**2.** The instructions were proposed by the government prior to trial, apparently in response to an indication at the pre-trial conference that an entrapment defense would be raised.

**3.** Objection is made to the trial judge's restriction of cross-examination of the agent about

Ellsworth's role. But the subject was not part of the government's case and was outside the scope of proper cross-examination. F.R.Evid., Rule 611(b). Indeed, during the bench conference defense counsel admitted that the attempt was "premature". *United States v. Ramirez,* 533 F.2d 138, 141 (5th Cir. 1976).

The government asserted that the informant was only an introductory device; even by appellant's version he did not witness or participate in the actual crime. The government had no reason to expect even a burden of disclosure under *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). *See United States v. Skeens*, 145 U.S.App.D.C. 404, 449 F.2d 1066, 1071 (1971); *Zaroogian v. United States*, 367 F.2d 959 (1st Cir. 1966). Less than two weeks prior to trial appellant filed a conclusory boilerplate motion for disclosure, but the motion did not refer to any facts of the case at hand, and it was properly denied.[4] Appellant could gain nothing from this pro forma request; some specific indication of need is required. *See United States v. Alvarez*, 469 F.2d 1065 (9th Cir. 1972). Nor does it appear that the supposed entrapment defense (which failed to materialize) was raised prior to trial with any specificity. *See United States v. Mehciz*, 437 F.2d 145 (9th Cir. 1971).

Appellant appears to argue that his midtrial request put a burden of production on the government, the necessity for a continuance being *a fortiori* when it turned out Ellsworth was incapacitated.[5] But there is no absolute rule of production. *United States v. Davila Williams*, 496 F.2d 378, 383 (1st Cir. 1974). Here, there was no indication that appellant, with some diligence, could not have located Ellsworth in advance

of trial, either with the information available to him or by subpoena. And Ellsworth's unavailability cannot be attributed to a failure of reasonable diligence or cooperation on the government's part.[6] Finally, the court could properly consider the extreme incredibility of appellant's story, his failure to call the Secret Service agent for partial corroboration, and the government's contrary offer of proof. It was not error to deny the continuance. *See also United States v. Enrique Diaz*, 535 F.2d 130 (1st Cir. 1976).

■ Appellant's next point is that because Marino was aware that he was buying counterfeit bills, there was no evidence in support of the statutory requirement of "intent that the same be passed, published, or used as true and genuine." This argument overlooks the fact, reflected in the taped phone calls and admitted by appellant, that Marino told appellant he was going to use the fake bills as collateral for a bank loan. The further twist that this transaction purportedly was going to be accomplished with the connivance of one of the officers of the bank does not negate the fact that Marino's stated purpose was to use them as genuine vis-a-vis the bank itself. There is no requirement under § 473 that it be the immediate purchaser who is defrauded. *Hart v. United States*, 396 F.2d 243 (8th Cir. 1968).

4. The motion also was internally inconsistent, stating generally that disclosure was necessary since the informant could testify as to the defendant's state of mind and also could throw doubt on the identity of the defendant. We note that the latter assertion, among others in the motion, was directly contradicted by appellant's later testimony.

5. At the end of the first day of the two-day trial, a Friday, the defense stated that it knew Ellsworth must be an informant and requested his production. The trial judge took the matter under advisement and suggested the government contact Ellsworth over the weekend in case of an adverse ruling. After appellant testified on Monday, the defense called Ellsworth in open court. In a bench conference, the government stated that it had located Ellsworth, confined with a slipped disc and under doctor's orders not to travel for at least two

weeks. At that point the defense request for a continuance in order to take a deposition was made and denied, the court noting that it found appellant's story inherently incredible.

6. *See United States v. Super*, 492 F.2d 319 (2d Cir. 1974); *United States v. Fallings*, 482 F.2d 1352 (5th Cir. 1973); *United States v. Weinberg*, 478 F.2d 1351 (3d Cir. 1973); *United States v. Ortega*, 471 F.2d 1350 (2d Cir. 1972); *United States v. Prada*, 451 F.2d 1319 (2d Cir. 1971); *United States v. Escobedo*, 430 F.2d 603 (7th Cir. 1970); *United States v. Glass*, 371 F.2d 418 (7th Cir. 1966); *Velarde-Villareal v. United States*, 354 F.2d 9 (9th Cir. 1965). Nor, under the circumstances, can we say that the government had any duty to ascertain Ellsworth's availability in advance of trial. *Compare United States v. Jones*, 492 F.2d 239 (3d Cir. 1974).

Finally, appellant objects to the impeachment of his credibility on cross-examination through evidence of a 1966 manslaughter conviction and a 1970 arson conviction. Appellant's credibility was a significant issue in the trial, there was a proper limiting instruction, and the court determined that the probative value of the evidence outweighed its prejudicial effect. F.R.Evid., Rule 609(a). There was no abuse of discretion.

*Affirmed.*