EL PUEBLO DE PUERTO RICO, peticionario, *v.* DONALD TURNER GOODMAN y EDWIN MOLINA MALDONADO, acusados y recurridos.

*Número:* O-82-122        *Resuelto:* 29 de junio de 1982

*Justo Gorbea Varona,* Procurador General Interino, *Américo Serra,* Procurador General Auxiliar, abogados de El Pueblo; *Federico L. Torres Fernández,* y *Víctor M. Negrón Padilla,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público acusó a Turner Goodman y a Molina Maldonado de infringir el Art. 401 de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2401, al distribuir heroína sin autorización legal.

El 18 de octubre de 1979 se dio lectura a la acusación y se señaló el juicio para el 28 de noviembre siguiente. En esta última fecha se suspendió la vista, a petición de la defensa, hasta el 12 de febrero de 1980.

El 12 de febrero de 1980 la defensa manifestó que no estaba preparada para la vista. Solicitó además la defensa, la dirección del confidente Jeffrey Negrón, a quien había estado tratando de localizar y cuya presencia compulsoria había solicitado desde el 26 de setiembre de 1979, fecha de la vista preliminar. Así lo ordenó el tribunal al transferir la vista para el 8 de abril de 1980. Para el 8 de abril no se había logrado hallar al confidente. Se le informó a la defensa que Jeffrey Negrón ya no vivía en su dirección de récord, que posiblemente se encontraba en Chicago. El tribunal ordenó que se le citase nuevamente. Se fijó un nuevo señalamiento para el 9 de junio. El juicio se suspendió a petición del fiscal, quien informó que las gestiones para localizar al confidente habían sido infructuosas, por hallarse el mismo fuera de Puerto Rico.

Tras dos suspensiones adicionales, el juicio se celebró durante los días 15, 16 y 17 de diciembre de 1980. No consta en autos objeción alguna de la defensa a que se ventilase el juicio. El principal testigo de cargo fue el agente encubierto A. G. Hernández Brillón. El testigo declaró, en esencia, que estableció contacto con el acusado Turner a través del confidente Jeffrey Negrón; que presenció dos transacciones de drogas, junto con el confidente, las que involucraban a los co-acusados en ocasiones distintas. Los acusados descansaron en la defensa de coartada. Fueron hallados culpables.

El co-acusado Turner presentó a las pocas semanas de la sentencia una moción de nuevo juicio por derecho propio. En la vista celebrada sobre el particular, el acusado alegó que la ausencia del confidente Jeffrey Negrón Figueroa lo colocó en estado de indefensión y que la Policía había ocultado al confidente, pues su fotografía aparecía, supuestamente, junto a miembros de la Unidad de Drogas, en la edición de *El Vocero*, correspondiente al 10 de enero de 1981. El Ministerio Público demostró que la fotografía pertenecía a otra persona. La fiscalía desfiló prueba también sobre las gestiones efectuadas para localizar al confidente. Sus testigos declararon que Negrón Figueroa, un adicto, trabajó para la Policía desde el 23 de setiembre de 1978 hasta el 5 de enero de 1979. (La redada en que se apresó a los co-acusados tuvo lugar el 7 de marzo de 1979.) Se visitó su última dirección conocida: la casa de sus abuelos. Ya no vivía allí, dijeron éstos que quizás se encontraba en Hialeah o en Chicago. No se dio dirección, excepto que en Hialeah vivía el padre de Jeffrey. La Policía realizó innumerables gestiones en los sitios que más frecuentaba Jeffrey en Puerto Rico. Todas fueron inútiles. Uno de los abogados de los acusados testificó, por otro lado, que la defensa no hizo esfuerzo alguno de su parte para conseguir al confidente. No se entrevistaron con los abuelos ni familiar alguno de Jeffrey, a pesar de que la prueba revela que los acusados conocían bien al confidente.

El tribunal de instancia denegó la moción de nuevo juicio. Entre otras conclusiones, expresó que la prueba que pudo haber sido presentada, "si bien pudo ser de alguna utilidad a la defensa con toda probabilidad no hubiera cambiado el veredicto del caso". Se solicitó reconsideración y el tribunal de instancia decretó esta vez la celebración de un nuevo juicio. El Estado acudió en alzada ante este foro. Dictamos orden de mostrar causa por la cual no deben revocarse las resoluciones recurridas.

■ Este caso no plantea problema alguno respecto al privilegio de identidad del informante en Puerto Rico, reconocido por la Regla 32 de Evidencia.(1) El Estado suministró, voluntariamente, el nombre del confidente. La cuestión delicada que presenta es, ¿qué gestiones tiene que hacer el gobierno para encontrar a un confidente cuya identidad ha divulgado? ¿Hasta dónde alcanza el derecho del acusado bajo la Sec. 11, Art. II, de la Constitución del Estado Libre Asociado "a obtener la comparecencia compulsoria de testigos a su favor"?

Ya que la disposición citada arranca de la Enmienda Sexta a la Constitución de Estados Unidos, importa examinar el tratamiento del problema en las cortes federales. El Tribunal Supremo de Estados Unidos no se ha pronunciado definitivamente sobre el asunto. Las cortes de circuito han utilizado diferentes criterios, aunque hay uno que es el más generalizado.

■ Algunos tribunales le han exigido al Estado tan solo esfuerzos mínimos. *United States* v. *Cansler*, 419 F.2d 952 (1969); *United States* v. *Ortega*, 471 F.2d 1350, 1358–1359 (1972). Al otro extremo, ha habido jurisdicciones que han

---

(1) Este privilegio le permite al Estado no revelar la identidad de sus informantes en determinadas circunstancias. Nos hemos expresado sobre este particular en otras ocasiones. Véanse: *Benítez* v. *Tribunal Superior*, 102 D.P.R. 601 (1974); *Pueblo* v. *Beltrán Faría*, 102 D.P.R. 783 (1974); *Pueblo* v. *Acosta Escobar*, 101 D.P.R. 886 (1974). Véase también: *Roviaro* v. *United States*, 353 U.S. 53 (1957), según afectado por *Rugendorf* v. *United States*, 376 U.S. 528 (1964) y *Branzburg* v. *Hayes*, 408 U.S. 665 (1972).

convertido prácticamente al Estado en un garantizador de la presencia del confidente en corte. *United States* v. *Hart*, 546 F.2d 798 (1976). En *Velarde-Villarreal* v. *United States*, 354 F.2d 9 (1965), se estableció el criterio prevaleciente hoy día. M. D. Marrs, *The Informant and Accomplice Witness: Problems for the Prosecution*, 9 The John Marshall J. Prac. & Proc. 243, 250 (1975). Tal criterio requiere que el Estado haga esfuerzos razonables para localizar al confidente. ¿Qué es lo que constituye "esfuerzos razonables"?, dependerá de cada caso.

En el desarrollo de la doctrina del esfuerzo razonable, *United States* v. *Williams*, 496 F.2d 378, 382 (1974), se ha convertido en caso normativo. El tribunal afirmó, en *Williams*, supra:

> Cuán lejos debe ir [el Estado] para seguirle la pista o buscar a un confidente, es una regla de definición menos fácil; ello depende de muchos factores, entre los que se cuentan el grado de control del informante por el gobierno, la importancia de su testimonio, la dificultad de localizar al confidente y elementos similares. No aceptamos una norma rígida que requiera la presentación de todo testigo cuando su nombre no se ha hecho disponible [citas omitidas]. Mas, de desaparecer un informante o de no estar éste asequible a la defensa, obligaríamos al gobierno, previa solicitud oportuna, a encontrar al confidente o a demostrarle satisfactoriamente a este Tribunal por qué no puede esperarse razonablemente que lo haga, así como la diligencia generalmente desplegada en torno a su desaparición. (Traducción nuestra.)

El tribunal confirmó la convicción en *Williams*, supra, por falta de diligencia de la propia defensa en gestionar oportunamente la comparecencia del testigo.

La conducta de la defensa es definitivamente uno de los factores a sopesarse. En *United States* v. *Ariza-Ibarra*, 651 F.2d 2 (1981), *cert.* denegado: 454 U.S. 895 (1981), CCH Supreme Court Bulletin, 1981–1982, Vol. 2, pág. 7072, Docket No. 81-203, el Tribunal señaló la pertinencia, para medir la vitalidad del testimonio, de los esfuerzos de la

defensa por localizar al confidente. En *Ariza-Ibarra*, supra, el tribunal determinó que la conducta de la defensa revelaba más el deseo de provocar un error que de localizar al confidente. La defensa nunca intentó citar al informante, ni hizo esfuerzos para localizarlo, a pesar de estar en posición para ello, ni requirió el nombramiento de un investigador. Véase: *United States* v. *Super*, 492 F.2d 319 (1974), *cert.* denegado *sub nom. Burns* v. *United States*, 419 U.S. 876 (1974).

Otro factor que se ha tomado en consideración, en ocasiones, es el hecho de si el acusado y el confidente se conocen, lo cual puede pesar sobre las diligencias respectivas a realizarse. *United States* v. *Díaz*, 535 F.2d 130 (1976).

La vitalidad del testimonio a prestarse ha sido otro factor objeto de frecuente escrutinio. *United States* v. *Nutile*, 550 F.2d 701 (1977). Aunque la carga de probar que se han hecho esfuerzos razonables para localizar al confidente recae sobre el Estado, *United States* v. *Opager*, 589 F.2d 799 (1979), la defensa debe demostrar que la ausencia del testigo le puede causar o le ha causado algún perjuicio. *Ariza-Ibarra*, supra, pág. 14; *United States* v. *De Jesus-Boria*, 518 F.2d 368 (1975); *Super*, supra, págs. 322–323.

Por otro lado, el gobierno, en casos en que no ha invocado o en que no cabe invocar con éxito el privilegio de no revelar la identidad del informante, no puede ocultar su nombre, dirección y señas y aguardar hasta el momento del juicio para intentar entonces localizar al confidente. *United States* v. *Leon*, 487 F.2d 389 (1973). Véase: *Clark* v. *Blackburn*, 632 F.2d 531 (1980). El hecho de que el acusado conozca al confidente no releva al Estado de su responsabilidad. *Opager*, supra, pág. 805.

En Puerto Rico, hemos tenido ocasión de discutir tan sólo algunos aspectos del problema ante nosotros. En *Pueblo* v. *Villalongo Torres*, 102 D.P.R. 574, 579 (1974), al confirmar una denegatoria de nuevo juicio, aludimos al hecho de

que el apelante y el confidente se conocían, que no le habría sido difícil traerlo a juicio y que, además, el juez de instancia había estimado que el testimonio del informante no habría cambiado el veredicto. En *Benítez* v. *Tribunal Superior*, 102 D.P.R. 601, 605 (1974), señalamos que el testimonio del informante no era pertinente, por tratarse de una defensa de coartada, fundada en el testimonio del propio acusado.

Resolvemos que la doctrina aplicable en Puerto Rico, en este género de casos, es la del esfuerzo razonable. La razonabilidad del esfuerzo se medirá por las circunstancias que medien en cada causa en particular. Con tal fin, evaluaremos los elementos siguientes: el grado de control que el gobierno ejerza sobre el confidente, la pertinencia de su testimonio, la dificultad para localizarlo, el interés y la actividad desplegados por la defensa y el hecho de si el acusado y el confidente se conocen y hasta qué extremo.

A la luz de los criterios expuestos, no cabe imputarle al Estado, en este caso, que falló en desplegar diligencia razonable para localizar al confidente Jeffrey Negrón Figueroa. El confidente cesó de trabajar para la Policía más de ocho meses antes de que la defensa solicitase su citación. El grado de control del gobierno sobre el informante era inexistente. No se nos ha demostrado que el gobierno pudo tomar, eficazmente, medidas preventivas, mas no quiso, para asegurar, en su día, la presencia del confidente en el juicio. Los acusados y el confidente se conocían, mas la defensa asumió un papel pasivo. No intentó siquiera entrevistarse con los abuelos del informante. La Policía, en cambio, trató, con diligencia, de localizar al informante en su antigua dirección y en los sitios que frecuentaba. Lo único que no hizo fue intentar su búsqueda, sin dirección cierta para ello, en las ciudades vagamente mencionadas por los parientes del informante. Dadas las circunstancias mencionadas, más el hecho de que la defensa interpuesta fue la de

coartada, para la cual se contaba con otra prueba, no consideramos razonable requerirle a la Policía que extendiera su búsqueda a Hialeah y a Chicago.

Por las razones expuestas, *se revocarán las resoluciones recurridas y se anulará la concesión de un nuevo juicio a los apelados convictos.*

