**UNITED STATES of America, Appellee,**

v.

**Helen Mary FORMANCZYK,
Defendant, Appellant.**

**No. 90–1459.**

United States Court of Appeals,
First Circuit.

Heard July 30, 1991.

Decided Nov. 20, 1991.

Rehearing Denied Dec. 17, 1991.

Judith H. Mizner, Newburyport, Mass., for defendant, appellant.

Brien T. O'Connor, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and YOUNG,* District Judge.

TORRUELLA, Circuit Judge.

Helen Mary Formanczyk was convicted on one count of possession with intent to distribute more than one kilogram of a

* Of the District of Massachusetts, sitting by desig-   nation.

substance containing a detectable amount of heroin. After her conviction, the district court denied a motion for new trial based on the government's failure to disclose information acquired after its initial discovery response regarding the location of a confidential informant and his potential availability as a trial witness. This appeal turns on the government's continuing duty to revise its discovery responses once it has asserted its privilege under *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

I

On February 7, 1989, the Cyprus office of the Drug Enforcement Administration ("DEA") informed its Boston counterpart that an individual named "Toufic" had recruited a DEA informant by the name of Michel Kuba to transport one and a half kilograms of heroin from Lebanon to Boston, via Cyprus. The DEA made arrangements to have its informant travel with the heroin from Cyprus to the United States on February 11 and had him check into a hotel room in Boston the following afternoon. Over the next few days, more than one dozen telephone calls to and from Lebanon were recorded in which Toufic and Kuba discussed the specifics of the transaction. Their initial plan called for Kuba to travel to Detroit to meet a "woman" to whom he would deliver the heroin; in response to Kuba's complaints, however, Toufic ultimately agreed to have the courier travel to Boston to pick up the drugs.

The courier—who was originally supposed to leave Detroit at 11:00 p.m. on February 13—never arrived in Boston that night. Kuba called Toufic to complain that nobody had come to pick up the contraband, and Toufic reassured him that once the courier arrived in Boston she would call him (Toufic) and he would give her Kuba's number so that they could get in touch. At about 8:00 a.m. on February 14 Kuba did receive an incoming call at his hotel room from the appellant, who informed him that she was still in Detroit. As the noon check out time drew nearer and the courier did not arrive, Kuba again called Toufic to inform him that he had to leave the hotel because he could not pay for the room another day. Before checking out, Kuba gave Toufic a DEA undercover beeper number that he said belonged to a friend named "Steve" at which he could be reached.

Agent Stephen Assarian testified about the receipt of three calls at the DEA office the afternoon of February 14 from a person whose voice he identified as that of the appellant. Since Kuba had momentarily stepped out of the office, two of those calls were answered by Assarian, but a third call—received at 4:00 p.m.—was answered by Kuba. Pursuant to this last call, Kuba and Formanczyk agreed to meet at the lobby of the Holiday Inn on Blossom Street at 4:10 p.m. that same afternoon. Armed with a travel bag where Assarian had placed several plastic bags filled with heroin and covered them with a newspaper, Assarian and Kuba headed over to the hotel in which, after some introductory conversation, Formanczyk handed Kuba $1,000 in $50 bills and Assarian handed over the bag containing the heroin.

As Formanczyk was preparing to leave, however, Assarian told her that the bag belonged to his girlfriend and asked her if he could have it back. When Formanczyk refused, Assarian asked her for the newspaper, which he said he needed for school. This time Formanczyk complied with the request and (according to the agent) looked into the bag, reached in and handled the packages. Assarian also testified (and Formanczyk also denied) that when he told appellant that "[i]t's supposed to be pretty good stuff, like 93%," Formanczyk responded by looking at him, nodding and walking away. As Formanczyk attempted to hail a taxi, federal agents moved in for the arrest.

Prior to trial, appellant requested information concerning the names of witnesses or persons present during the acts alleged in the indictment. The government's response to this discovery request was as follows:

The government intends to call only federal law enforcement officials in this

case ... The heroin delivered to the defendant in this case was carried into the United States by an individual hired by unknown persons in Lebanon as a courier. Upon the apprehension of the courier, in New York, he was promised that he could return home, without being prosecuted, if he could simply follow his instructions regarding the delivery of the heroin. Following the delivery of the heroin to the defendant, the courier was permitted to leave the United States ... The courier ... resides in Lebanon, however, and it is not possible to secure his presence for trial. Counsel for the government is advised that to further identify the courier may cost him his life.

During the trial, however, appellant learned that the government had actually assisted its informant Michel Kuba in his efforts to return to the United States scarcely three months before the trial. Moreover, appellant discovered that Kuba's version of appellant's actions at their critical meeting differed from Agent Assarian's trial account in some significant respects which would have bolstered her defense of lack of knowledge regarding the contents of the bag. This formed the subject matter of appellant's motion for new trial; the motion was summarily denied. On appeal, appellant re-assays the arguments she presented to the district court.

## II

Appellant's position is that the circumstances surrounding the absence of informant Kuba at trial and the district court's refusal to give a missing witness instruction deprived her of her fifth and sixth amendment rights and entitle her to a new trial.[1] At the outset, we note that this is not a case where the defendant is alleging that the government hid or failed to disclose the existence of an informant, as the defendant herself personally met with Michel Kuba when the transaction was carried out. Rather, this case involves an allegation that the government intentionally misled the defense regarding the con-

tacts it had with the informant and its ability to procure his presence for trial where, presumably, his testimony would have exculpated the defendant. While we find that the government's actions did not meet the standard of reasonableness established in *United States v. Williams*, 496 F.2d 378, 382 (1st Cir.1974), a new trial is not required under the circumstances of this case.

■ The seminal case regarding the duty of the government to identify or produce its informants is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro*, the Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59, 77 S.Ct. at 627. It specified, however, that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 627–28. The Court declined to adopt rigid guidelines as to when the privilege should apply, opting instead for requiring the lower courts to balance, under the particular circumstances of each case, "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628; *see also United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 43 (1st Cir.1991); *Ass'n. for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir.1984); *United States v. Estrella*, 567 F.2d 1151, 1152–53 (1st Cir.1977).

■ The government's duty with respect to the production of an informant, however, is separate and distinct from its duty to merely identify the informant. *United States v. Diaz*, 535 F.2d 130, 134 (1st Cir. 1976). In *Williams*, we defined the government's responsibility to produce in-

---

1. Alternatively, Formanczyk contends that she is at least entitled to an evidentiary hearing in the district court on her motion for a new trial.

Given the grounds on which we base our decision, we need not address appellant's alternative argument.

formation regarding the identification and whereabouts of its informers stating that:

> [the government's duty] to produce names and addresses requires it *to produce correct information or at least to have exercised diligence reasonable under the circumstances to locate the informer.* ... How far it must go to keep track of, or search for, an informer ... depends on many factors including the extent of the government's control over the witness, the importance of the witness' testimony, the difficulty of finding him and similar matters. We do not accept a flat rule requiring production of all informer witnesses whenever the government has not disclosed their names before trial.... But should an informer disappear or become unavailable to the defense, we would compel the government, upon timely demand, either to locate him or make an affirmative showing satisfactory to the court why it could not reasonably be expected to do so and of its diligence generally as regards the disappearance.

*Williams,* 496 F.2d at 382 (emphasis ours); *see also United States v. Nutile,* 550 F.2d 701, 703–04 (1st Cir.1977); *United States v. De Jesus Boria,* 518 F.2d 368, 371–73 (1st Cir.1975).

■ Relying on *Williams,* the government argues on appeal that once it asserted its *Roviaro* privilege it had no duty to extend additional information regarding its informants until the defendant had moved the court for an order directing the government to produce this information and the court had overruled the government's assertion of the privilege. *Williams,* 496 F.2d at 381. With this we would agree completely if the only thing the government had declared in its discovery response had been that it was asserting its privilege under *Roviaro.* However, the government volunteered some additional information, specifically, that the witness had left the United States and was out of the reach of process. Once this statement was made, the government placed itself under a continuing duty to keep the defendant informed of any changes coming to its attention that might have rendered the contents of its discovery response inaccurate, misleading or incorrect. *Id.* at 382; *see also United States v. Ferrer–Cruz,* 899 F.2d 135, 140 (1st Cir.1990) ("Of course, under Fed.R.Crim.P. 16(c) the government has a continuing duty to disclose discoverable evidence that has come to light after the defendant's original discovery request"). The defense's strategic decision whether to push for the presence of a particular witness at trial clearly depended on the information it had available at the time and, given the government's representation, it was reasonable for the appellant to believe that such a request would have been an exercise in futility. To hold that even under these circumstances the government did not have a duty to correct its discovery responses until the defense had made a second request into the identities of these witnesses would elevate form over substance and condone prosecutorial actions that fall below *Williams'* reasonable diligence standard. The government's duty "to produce correct information," *Williams,* 496 F.2d at 382, is not to be lightly undertaken.

■ Concluding that the government violated Rule 16 of the Federal Rules of Criminal Procedure does not end our inquiry, as reversible error will not lie until the appellant has shown that he has been prejudiced by the government's actions. *United States v. Hemmer,* 729 F.2d 10, 13 (1st Cir.) ("In order to succeed on a claimed violation of rule 16 ... a defendant must demonstrate that he has been prejudiced."), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *United States v. Mack,* 892 F.2d 134, 136 (1st Cir.1989) (same). No such showing has been made here. A review of the record reveals that defense counsel utilized the informant's absence at trial to his client's strategic advantage. He repeatedly stated during his skillful cross-examination of the DEA agents that the government had either sent Kuba out of the country or allowed him to leave the country. In so doing, he attempted to bolster her defense that the DEA had done such a shoddy and unprofessional job investigating the case that it could not

have carried its burden of establishing guilt beyond a reasonable doubt. It is also apparent from the record that counsel for the defense attempted to rely on Kuba's absence in an effort to obtain a missing witness instruction. His skillful cross-examination of the DEA agents, all the while attempting to demonstrate dishonesty in the conduct of their investigation, buttresses this conclusion. Both in *Williams* and *United States v. Ariza–Ibarra*, 651 F.2d 2 (1st Cir.1981), we considered the sophistication of the defense in other aspects of the case to conclude that the absence of the witness was utilized at trial to the appellant's advantage in an effort to obtain a missing witness instruction. Such an inference is also warranted here.

With regard to the "new evidence" aspect of appellant's argument, a motion for new trial on the grounds of

> newly discovered evidence will not be granted unless the moving party can demonstrate that (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to a lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant.

*United States v. Martin*, 815 F.2d 818, 824 (1st Cir.1987) (quoting *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980)).

■ The new facts to which Kuba would presumably be testifying were that the appellant did not handle the heroin packages and that she did not respond to any statements concerning quality by Assarian. These facts fail to pass muster on the third and fourth factors outlined above, as they would be primarily used to impeach the testimony of at least three other agents who testified to the contrary at trial and whom we must presume the jury believed. Moreover, even if Kuba testified to these facts in a second trial, he could be impeached with his previous signed statement to the contrary. Finally, we note the government's proof of appellant's guilt was very strong. To the foregoing summary of the evidence, we need only add that at the time of her arrest the agents seized from appellant a piece of paper containing notations in which she divided "28" (the number of grams in an ounce) into "1,000" (the number of grams in a kilogram), and that she conceded that she had looked into the bag, seen the white powder and figured that it was probably illegal though not conceding that she knew it was heroin. Both of these factors are further proof concerning appellant's knowledge of the contents of the bag. We therefore conclude that the motion for new trial was properly denied.

■ The balance of appellant's arguments do not require extensive discourse. Her contention that the trial court erred in failing to impart a missing witness instruction based on Kuba's unavailability at trial must fail because there is no basis to presume that the reason the government did not procure his presence at trial was due to the fact that his testimony would have adversely affected its case. *See United States v. Martinez*, 922 F.2d 914, 924 (1st Cir.1991). Security reasons clearly justified protecting the identity of an informer who had infiltrated such a large-scale drug operation and the cumulative nature of his potential testimony rendered it nonessential.

■ Lastly, appellant argues that the district court erred in ruling that the transcripts of Toufic's and Kuba's telephone conversations were admissible against her under the co-conspirator exception of Fed. R.Evid. 801(d)(2)(E). This contention is simply without merit. As our summary of the evidence evinces, Toufic and Formanczyk were clearly co-conspirators in this illegal drug venture and thus Toufic's statements to Kuba, made during the course of the conspiracy and in furtherance of its purposes, were admissible against the appellant. *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). As for Kuba's statements, no objection was raised below and the contention is therefore waived for purposes of appeal where, as here, no plain error appears.

*United States v. Malik,* 928 F.2d 17, 23 (1st Cir.1991).

*Affirmed.*