UNITED STATES of America

v.

Francis P. SALEMME, et al.

Cr. No. 94–10287–MLW.

United States District Court,
D. Massachusetts.

June 19, 1997.

Anthony M. Cardinale, Boston, MA, for Robert P. Deluca.

MaryEllen Kelleher, Law Office of Richard Egbert, Boston, MA, Anthony M. Cardinale, Boston, MA, for Francis P. Salemme, Sr.

Kenneth J. Fishman, Bailey, Fishman & Leonard, Boston, MA, Richard M. Egbert, Boston, MA, for Stephen J. Flemmi.

Michael C. Bourbeau, Boston, MA, Robert A. George, Boston, MA, for James M. Martorano.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, Anthony M. Cardinale, for John V. Martorano.

Fred M. Wyshak, Jr., U.s. Attorney's Office, Boston, MA, for U.S.

### MEMORANDUM AND ORDER

WOLF, District Judge.

For the reasons described in prior Memoranda and Orders the defendants in this case have made the substantial preliminary showing required by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that is necessary to obtain an evidentiary hearing on their motion to suppress the intercepted La Cosa Nostra ("LCN") induction ceremony conducted at 34 Guild Street, Medford, Massachusetts on October 29, 1989. Indeed, the government now concedes that there is a proper basis for a *Franks* hearing with regard to that interception. *See* June 3, 1997 Government's Motion to Reconsider at 2; June 3, 1997 Transcript ("Tr.") at 41.

For the reasons described in detail in prior Memoranda and Orders, the defendants also made a substantial preliminary showing that Angelo "Sonny" Mercurio and Robert Donati were, during the relevant period, government informants and that, if true, disclosure of these facts, and the contents of at least some of their communications with the government, is important to a fair determination of the motion to suppress the intercepted LCN induction ceremony and related questions concerning whether there has been a pattern of government misconduct which may justify the dismissal of this case. May 22, 1997 Memorandum and Order Unsealed and Partially Unredacted June 6, 1997 ("May 22, 1997 Memorandum and Order") at 24–25; June 6, 1997 Memorandum and Order at 5, 7–8 & n. 2, 23; June 13, 1997 Memorandum and Order at 5. Thus, the court has found that in the circumstances of this case the defendants' right to prepare and present their defense outweighs the general public interest in maintaining confidentiality concerning possible informants. *Id.* Accordingly, the court exercised its discretion, *see United States v. Batista–Polanco*, 927 F.2d 14, 19 (1st Cir.1991), and ordered the Acting Deputy Attorney General ("ADAG") Seth A. Waxman to disclose to defendants whether Mercurio and/or Donati were informants.[1]

---

1. As explained in footnote 9 on page 32, which was redacted from the version of the May 22, 1997 Memorandum and Order provided to the parties and unsealed on June 6, 1997, prior to Mercurio's agreement to plead guilty, on July 31, 1995, the government informed Magistrate Judge Lawrence Cohen, who was handling pretrial discovery matters, that Mercurio had served as a Federal Bureau of Investigation ("FBI") informant and requested authority to disclose certain statements previously made by Mercurio to him directly rather than through his lawyers. July 31, 1995 Government's Ex Parte Motion for Protective Order. The Magistrate Judge granted this request and impounded the motion and Order. Neither the Magistrate Judge nor the government informed this court of these matters or of Mercurio's status as an informant. This court discovered the documents disclosing Mercurio's status long after it had sentenced him, when defendants, in support of the present motion to suppress, pointed out that the filing of documents under seal was reflected on the docket.

This court's Orders requiring disclosure concerning Mercurio's status to defendants and Do-

The ADAG has declined to comply with these Orders, most recently in an affidavit filed on June 11, 1997. Thus, the defendants and the court have been deprived of information that, as described in previous Memoranda, is important to resolving on the merits the question whether the intercepted LCN induction ceremony should be suppressed and other matters, including the question whether this case should be dismissed because of an alleged persistent pattern of government misconduct that makes this prosecution fundamentally unfair and must be deterred. May 22, 1997 Memorandum at 24–25; June 6, 1997 Memorandum and Order at 5, 7–8 & n. 2, 23; June 13, 1997 Memorandum and Order at 5.

In his June 16, 1997 Affidavit, the ADAG suggested, however, that his refusal to obey the court's Orders regarding Mercurio, Donati, Guarino and St. Laurant may not be final and might be revised if circumstances changed. More specifically, the ADAG stated that:

1. As a sanction for noncompliance with this Court's Order of June 6, 1997, the government presently intends: (i) to accept the exclusion of specified electronic surveillance evidence rather than confirm or deny whether Angelo Mercurio, Robert Donati, Kenneth Guarino, or Anthony St. Laurant were informants; and (ii) to appeal any suppression order entered by the Court.

2. If the Court of Appeals affirms such a suppression order, the government may reassess its decision neither to confirm nor deny whether the aforementioned individuals were informants, in light of: (i) the consequences of the Court of Appeals' opinion for the government's informant program in general and for this case; (ii) a contemporaneous assessment of the danger that disclosure would pose to any person; and (iii) *any other changed circumstances.*

(emphasis added). On June 18, 1997, there was a significant change in the circumstances concerning the motion to suppress the LCN induction ceremony. This evolution of events causes the court to pause in these proceedings in order to permit, and indeed require, the ADAG to reevaluate his decision not to confirm or deny whether Donati was an informant.

On June 17 and 18, 1997, the court adopted an approach with regard to Mercurio that the government had suggested concerning St. Laurant and Guarino, see June 3, 1997 Motion to Reconsider at 6, and called Mercurio as a witness. In connection with this the government represented that if Mercurio testified and lied about whether he was cooperating with the government with regard to the October 29, 1989 LCN induction ceremony, it would provide the court and the defendants accurate information—thus confirming or denying Mercurio's status as an informant as the court had ordered. After consulting counsel and reflecting upon his options, on June 18, 1997 Mercurio testified that he was cooperating with the government in connection with the October 29, 1989 LCN induction ceremony. As a result, the government has stated that Mercurio was the informant that it had previously agreed to stipulate was present at the ceremony. *See* June 3, 1997 Government Motion to Reconsider at 10, and Attachment A. The government has also acknowledged that the defendants are entitled to appropriate discovery concerning Mercurio's cooperation, although the parameters of that discovery remain in dispute.

Accordingly, the immediate remaining issue regarding the *Franks* hearing concerning the intercepted LCN induction ceremony is

nati's status to defendants and the court were issued in connection with comparable Orders directing disclosure of whether James "Whitey" Bulger, Kenneth Guarino and/or Anthony St. Laurant were also informants. The government has confirmed that Bulger was an informant. The ADAG has, however, declined to comply with the court's Orders regarding Guarino and St. Laurant, which are relevant to the possible suppression of conversations intercepted on December 11, 1991 at the Hilton Hotel in Boston,

Massachusetts. The government has a pending motion for reconsideration regarding the Orders concerning Guarino and St. Laurant which the court will again consider seriously, but decide separately. As set forth in this Memorandum, the court recognizes that there are distinctions between Donati on one hand and Guarino and St. Laurant on the other and that those distinctions might affect the ADAG's decision whether to disclose their respective statuses.

whether Donati was also an informant. May 22, 1997 Memorandum and Order at 32–35; June 6, 1997 Memorandum and Order at 8–9. As stated at the June 18, 1997 hearing, this court has a strong preference for deciding the motion to suppress the LCN induction ceremony on the merits, rather than as a sanction for the ADAG's recalcitrance. This preference is based, in part, on the fact that it is in the interest of the administration of justice in this case, and in the many other LCN cases potentially affected, that reliable evidence of serious crimes not be excluded unless the standards of *Franks* are met, and in part on the fact that if suppression of the LCN induction ceremony is ordered without a full and fair hearing of the merits of defendants' claims, possible serious government misconduct may be covered-up.

The court notes that in contrast to a court order directing disclosure of classified information and certain other things, the applicable federal regulation gives the ADAG the discretion to comply with a court order requiring the disclosure of an informant. *See* 28 C.F.R. § 16.26. In exercising this discretion, and deciding whether to comply or accept a sanction for noncompliance, the ADAG must consider:

(1) The seriousness of the violation or crime involved.

(2) The past history or criminal record of the violator or accused.

(3) The importance of the relief sought.

(4) The importance of the legal issues presented.

(5) Other matters brought to the attention of the [ADAG].

*Id.*

In this case, the Fourth Superseding Indictment plainly charges that very serious crimes were committed by defendants with significant criminal histories, who allegedly remain dangerous to the public. The refusal of the ADAG to comply with the court's Order concerning Donati not only invites suppression of the LCN induction ceremony, but also all evidence derived from it. *See* 18 U.S.C. § 2518(10)(a). Such evidence may include the December 11, 1991 interceptions at the Hilton Hotel that is now also at issue because the intercepted LCN ceremony was referenced and relied upon in the affidavit in support of the application for authority to conduct that electronic surveillance. October 27, 1989 Affidavit of Walter J. Steffens ¶ 9, Bate Stamp 8856.

As described in detail in previous Memoranda and Orders, this court recognizes that there is generally a public interest in maintaining the confidentiality of informants and, at times, meaningful concerns regarding their safety. However, even in cases involving alleged members of the LCN, the government has not always declined to identify an informant. For example, in *United States v. Johnson,* 801 F.2d 597, 598 (2d Cir.1986), the Court of Appeals for the Second Circuit explained that:

> *This appeal arises out of a criminal prosecution brought against Johnson and nine others on two counts of racketeering, in violation of 18 U.S.C. § 1962(c) and (d) (1982), for their alleged participation in the affairs of the Gambino crime family. After the indictment, the government identified Johnson as an informant for the Federal Bureau of Investigation ("FBI") and moved to have him detained on the ground that he was likely to flee. At the detention hearing Johnson voluntarily testified, denying that he had ever been a government informant. The district court found to the contrary, however, and ordered him detained.*

> *During pretrial discovery, portions of Johnson's informant file were disclosed to his codefendants.* They then filed joint pretrial motions to exclude from evidence all hearsay statements made by Johnson that the government intended to offer as statements by a coconspirator under Fed. R.Evid. 801(d)(2)(E).

(emphasis added).

Similarly, in the instant case the government complied with this court's Order and confirmed that James "Whitey" Bulger was an informant.[2] Thus, complying with the

---

2. In disclosing that Bulger was an informant the government explained that his current status as a defendant, on charges that he committed serious crimes while an informant, and the fact that he is

court's pending Orders regarding Donati would not be unprecedented.

In his June 16, 1997 affidavit, the ADAG indicated that if there were changed circumstances, he would, in deciding whether to revise his position, consider, among other things, "a contemporaneous assessment of the danger that disclosure would pose to any person." In contrast to Mercurio, St. Laurant, and Guarino, Donati is deceased. The court is not aware that anyone close to Donati is now perceived to be in danger because of Donati's possible status as an informant, but such danger, if any, has existed since Donati's death in 1991,[3] and if it is believed to be a serious threat, appropriate measures could and should have been taken to protect against it by now.

Moreover, in contrast to Mercurio, Guarino and St. Laurant, who could each be asked by the court about their status, only the government can confirm or deny whether Donati was an informant. In response to questioning, the government has not suggested any alternative to address the issues relating to Donati other than reliance upon its representation that no misconduct occurred. The his-

tory of the government's conduct in the litigation since 1991 regarding the intercepted LCN induction ceremony,[4] and the substantial preliminary showing defendants have made that the government failed in its statutory duty to make full and complete disclosures regarding certain matters to the court in obtaining the other orders authorizing electronic surveillance now at issue, render the government's proffered representations unacceptable.

As indicated earlier, the refusal of the ADAG to comply with the court's Orders regarding Donati invites the court to, at a minimum, exclude from the trial of this case the intercepted LCN induction ceremony and any evidence derived from it. However, imposition of exclusion as a sanction, and/or the refusal of the government to disclose whether Donati was an informant, also have the potential to impede the hearings necessary to determine whether members of the Department of Justice engaged in serious misconduct and, if so, whether this case should be dismissed. *See* June 13, 1997 Memorandum and Order at 4–5 (citing *United States v.*

---

now a fugitive indicated that he had forfeited any reasonable expectation that his previous informant status would remain confidential. Affidavit of Paul E. Coffey, Esq., filed June 3, 1997, under seal. The government characterized Bulger's circumstances as "rare and unique." *Id.* As the court noted at the June 17, 1997 hearing, however, Mercurio was in many respects similarly situated to Bulger, but the government refused to confirm his status formally, while virtually doing so by proposing to stipulate that it had an informant at the October 29, 1989 LCN induction ceremony. *See* June 3, 1997 Government Motion to Reconsider at 10, and Attachment A.

**3.** *See* David Liscio, *Revere Man Murdered for Helping FBI Probe*, Lynn Item, October 1, 1991, at 1 (reporting that Donati was murdered because he was believed to be an informant).

**4.** As this court found previously, in 1991 the government initially attempted to mislead the court and the defendants in *United States v. Ferrara* concerning the existence of the question of whether the government had failed to provide the issuing judge all of the legally required information with regard to whether roving electronic surveillance should be authorized. *See* 771 F.Supp. 1266, 1308 & n. 16 (D.Mass.1991). Questions concerning the reliability of the government's representations in connection with

this matter persist. In 1991 this court relied upon the testimony of an Assistant United States Attorney in finding that she did not "fail to mention 34 Guild Street to [the issuing judge] to protect the identity of any informant." *Id.* at 1279. In the May 22, 1997 Memorandum and Order, page 30, the court noted this finding. On June 3, 1997, the government disclosed to the court and the defendants in this case an October 25, 1989 memorandum from the Boston office of the FBI to its headquarters concerning the then proposed application for a roving warrant. That memorandum states, in part, that "[roving] authorization will also help to protect the identity of any confidential sources, who otherwise might be revealed if singular information (in this case, the location of sensitive LCN meeting) provided by the source was incorporated into the affidavit of a traditional Title III application." Attachment to June 3, 1997 letter from Assistant United States Attorney Fred M. Wyshak. This statement is inconsistent with the position that the government took in 1991 regarding its reasons for seeking roving authority. The court recognizes the possibility that different representatives of the government may have had different motives in seeking roving authorization. This is an issue that may be explored at the *Franks* hearing that has been ordered. As the government acknowledged at the June 3, 1997 hearing, however, the October 25, 1989 FBI memorandum should have been disclosed in 1991. June 3, 1997 Tr. at 10.

*Morrison,* 449 U.S. 361, 366 n. 2, 101 S.Ct. 665, 669 n. 2, 66 L.Ed.2d 564 (1981), and *Bank of Nova Scotia v. United States,* 487 U.S. 250, 259, 108 S.Ct. 2369, 2375–76, 101 L.Ed.2d 228 (1988)).

The issues of possible government misconduct now presented in this case may include, but not be limited to, the following: (1) whether the government persistently failed to meet its statutory obligations to make the "full and complete statement[s]" concerning the necessity for electronic surveillance and the need for roving orders required by 18 U.S.C. §§ 2518(1)(c) and (11)(a)(ii), *see* May 22, 1997 Memorandum and Order at 9–13; June 6, 1997 Memorandum and Order at 11–12; [5] (2) whether the court was deliberately misled when informed in 1991 that the government was not motivated to seek a roving order, rather than a warrant to bug 34 Guild Street, by a desire to protect the identity of any informant, *see* n. 4, *supra;* (3) whether Donati and/or Mercurio improperly attended or reported to the government concerning meetings between counsel and any defendant in this case either before or after his indictment, *see, e.g., Weatherford v. Bursey,* 429 U.S. 545, 554, 97 S.Ct. 837, 843, 51 L.Ed.2d 30 (1977)(listing factors that indicate when presence of informant at attorney-client meeting may violate defendant's Sixth Amendment rights); *United States v. Mastroianni,* 749 F.2d 900, 905–908 (1st Cir.1984)(explaining *Weatherford* and delineating burden of proof for such a Sixth Amendment claim); (4) whether, while an informant, Mercurio participated in the attempted murder of defendant Francis Salemme and, if so, whether the government abetted or tacitly approved that crime, *see* May 22, 1997 Memorandum and Order at 35–36; June 13, 1997 Memorandum and Order at 5–6; and (5) whether any employee of the government participated in harboring Mercurio while he was a fugitive.

Thus, issues of possible serious government misconduct have been presented. The court's ability to resolve the merits of those issues will be impeded, and possibly frustrated, if the ADAG continues to decline to disclose whether Donati was an informant despite Mercurio's recent revelation regarding his status. It is appropriate to reiterate, however, that while defendants have properly presented many serious issues concerning possible government misconduct, those issues have not been decided. *See* May 22, 1997 Memorandum and Order at 48. Rather, the court has determined only that the defendants are entitled to evidentiary hearings

---

5. A full and complete statement regarding the availability of other techniques, including the use of informants, is required so that the issuing judge can make the findings as to necessity of electronic surveillance required by Title III. *United States v. Cole,* 807 F.2d 262, 267 (1st Cir.1986)(noting the importance of judicial scrutiny of wiretap applications to the necessity prong of Title III), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987); *United States v. Abou–Saada,* 785 F.2d 1, 11 (1st Cir.)(stressing that "the district court must satisfy itself" that electronic surveillance is necessary)(Breyer, C.J.), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986); *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.)(observing that issuing judge must consider "all the facts and circumstances")(quoting S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2190), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). The full and complete statement must pertain to the specific facts of the case. *United States v. Simpson,* 813 F.2d 1462, 1471 (9th Cir.)(wiretap "'affidavit must show with specificity why in *this particular investigation* ordinary means of investigation will fail'")(quoting *United States v. Robinson,* 698 F.2d 448, 453 (D.C.Cir.1983)(emphasis in original)), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).

Where the government is employing one or more confidential informants, it is particularly important to disclose enough information in the affidavit to permit the issuing judge to perform the statutorily required review. *See, e.g., United States v. Falls,* 34 F.3d 674, 682 (8th Cir.1994)("expressly disapprov[ing] the government's failure to inform the issuing judge" that the confidential informant was actually one of the named suspects in the application); *United States v. Brooklier,* 685 F.2d 1208, 1221 (9th Cir.1982)(noting that government's doubts as to whether or not a confidential informant would "fully" cooperate "did not relieve it of the obligation to set forth those facts" to the issuing judge), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

If a pattern of misconduct is proven with regard to the applications for electronic surveillance relating to this case, the question may be presented in other matters whether the Department of Justice, which must review and approve all applications for electronic surveillance, 18 U.S.C. § 2516, had a national practice that was legally deficient.

concerning some, but not necessarily all, of the issues presented and that certain disclosures are required to permit those hearings to be conducted properly. Similarly, the court notes that even if some misconduct is ultimately proven, it does not necessarily follow that any evidence will be suppressed or that this case must be dismissed. *See, e.g., Ferrara,* 771 F.Supp. at 1311 (holding failure to satisfy 18 U.S.C. § 2518(11)(a)(ii) did not, on facts found, justify suppression because omission was inadvertent and omitted information was not material); *United States v. Isgro,* 974 F.2d 1091, 1098 (9th Cir.1992)(holding that while there was justification to sanction proven government misconduct, dismissal was unwarranted), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1581, 123 L.Ed.2d 148 (1993).

▮ Once again, this court fully appreciates that it is generally not in the interests of the administration of justice, or the individuals involved, for the government to confirm or deny an individual's status as an informant. *See generally Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However, those generally valid considerations are trumped when a court, properly balancing the particular circumstances of the case, decides that "the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id. See also United States v.. Formanczyk,* 949 F.2d 526, 529 (1st Cir.1991). After ten hearings, for the reasons now addressed in four Memoranda and Orders, the court continues to find with regard to Donati's status that this is such a case.

▮ As described earlier, Mercurio's confirmation that he was an informant is a changed circumstance that the ADAG did not have the opportunity to consider in deciding previously not to comply with this court's Orders regarding Donati. The court believes that the ADAG should, therefore, have another opportunity to decide if he will confirm or deny Donati's status before this court decides how to proceed. In doing so, the court expects that the ADAG will consider the factors described in 28 C.F.R. §16.26 and the potential adverse effects that a refusal to comply may have on the administration of justice. These potential adverse effects include, but may not be limited to: the exclusion of the intercepted LCN induction ceremony and any evidence derived from it at the possible trial of this case; the fact that such exclusion will strengthen defendants' contention that this case should be dismissed because of a persistent pattern of government misconduct; the fact that suppression of the LCN induction ceremony in this case will foreseeably prompt petitions, pursuant to 28 U.S.C. § 2255, to vacate sentences imposed in other LCN cases in which the intercepted induction ceremony has been introduced as evidence or used to prompt a guilty plea; and the fact that because a properly informed decision by the court of the pending charges of past government misconduct will be at least impeded by the ADAG's refusal to disclose whether Donati was an informant, public confidence in the present administration of the Department of Justice may be injured.

Accordingly, as orally ordered on June 18, 1997, it is hereby ORDERED that:

1. The ADAG shall, by June 20, 1997 at 2:00 p.m., file an affidavit stating (a) that he has read this court's Memoranda and Orders which relate to the disclosure of Robert Donati's status, including this Memorandum and Order and the June 13, 1997 Memorandum and Order; (b) whether, in view of the changed circumstances, he will now comply with this court's Orders regarding Donati; and (c) if so, whether Donati was, at any time after 1967, a confidential source of information (however internally designated) for any agency or agent or attorney, within the United States Department of Justice, including but not limited to the Federal Bureau of Investigation. If the ADAG has not reached a decision by 2:00 p.m. on June 20, 1997 and wishes to consider this matter further, the court will, if requested, extend the time for his response to this Order to 9:00 a.m. on June 23, 1997.

2. Hearings will resume on June 23, 1997 at 9:30 a.m. to address the Donati matter, among other things.